517 So.2d 664 (1987)
Robert Joe LONG, Appellant,
v.
STATE of Florida, Appellee.
No. 67103.
Supreme Court of Florida.
November 12, 1987.
Rehearing Denied January 27, 1988.
*665 James Marion Moorman, Public Defender, Tenth Judicial Circuit, and W.C. McLain, Asst. Public Defender, Chief, Capital Appeals, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and James A. Young, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Robert Joe Long appeals his conviction for first-degree murder and his sentence of death imposed by the trial judge in accordance with the jury's recommendation. We have jurisdiction, article V, section 3(b)(1), Florida Constitution. For the reasons expressed below, we find we are mandated by the United States Supreme Court decisions in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), to vacate appellant's conviction and sentence and remand for a new trial.
The relevant facts reflect that on November 6, 1984, two women discovered a young woman's skeletonized remains in a horse pasture in rural Pasco county. The remains were identified as those of Virginia Johnson, a prostitute who had been reported missing since October. The medical examiner concluded that death occurred by strangulation, probably from a shoestring found around the neck, perhaps by manual strangulation.
In mid-November, 1984, Tampa and Hillsborough County law enforcement officials assembled a special task force to investigate a series of unsolved homicides pending in the area, including the Johnson murder. Based on information provided by a victim, Lisa McVey, who had been abducted from her apartment and sexually assaulted, officers were given a BOLO for a white male, approximately thirty years old, medium build, slightly pudgy, with conservatively cut brown hair and a mustache. The suspect was believed to be driving a red Dodge Magnum with white interior, the word "Magnum" and a digital watch located on the glovebox door. On November 15, two detectives spotted a vehicle and subject fitting the description. After stopping the suspect, detectives identified the vehicle's interior and observed additional facts confirming their initial suspicion. The driver identified himself as Robert Long. Rather than arrest Long, the detectives photographed the automobile, then released the suspect and notified their superiors. Based on an affidavit containing the above information, the detectives obtained an arrest warrant for Long and a search warrant for his apartment and car. Hair and fiber evidence found in Long's car and similar evidence received from an FBI analysis of Lisa McVey's clothing linked Long to the McVey sexual battery and kidnapping.
Long was arrested on November 16, 1984, pursuant to a warrant on the abduction, kidnapping, and involuntary sexual battery of Lisa McVey. After his arrest, Long was transported to the Hillsborough County sheriff's office for questioning. Initially, detectives read Long a form Miranda waiver. Long reviewed the waiver and signed it. According to detectives, Long spoke freely for approximately the next hour and one-half, answering questions and cooperating with police, who eventually obtained a full confession in the McVey case. At this point in the interrogation, one of the detectives left the room to retrieve snapshot photographs of recent murder victims. After his return, the detective asked Long if he had ever picked up prostitutes in the area. Long responded, "I would prefer not to answer that." The *666 detectives immediately began to show Long the murder victims' photographs. Long's attitude changed at this point and he remarked to the detective, "The complexion of things have sure changed since you came back into the room. I think I might need an attorney." The record is clear that the officers continued the interrogation. A portion of the suppression hearing testimony of one of the investigating officers reflects the following:
Q Okay. After Mr. Long said he'd rather not answer the question about Tampa prostitutes, after you showed him pictures of some prostitutes in Tampa, some maybe not prostitutes in Tampa, do you recall at that point Mr. Long saying "I think I might need an attorney"?
A Yes, sir.
Q Were those his exact words the best you recall?
A No, they weren't his exact words. Best of my recollection his exact words  he looked at myself, made the statement, "The complexion of things sure have changed since you came back into the room."
Q And?
A And he continued by saying, "I think I might need an attorney."
Q Complexion of things have changed, hadn't they?
A Yes, sir.
Q You told him they haven't?
A I said, "Nothing has changed. I'm still being honest with you."
Q Were you  were you being honest with him in fact?
A Nothing had changed for me. I was pursuing the interrogation.

... .
Q You told him nothing had changed. After he said, "I think I might need an attorney."
A That's true.
Q Did you attempt to clarify that?
A Yes, sir. I told Mr. Long not to try to fool himself or me, that he knew upon his arrest at the Main Street Theater that the interview being conducted in regards to Lisa McVey would eventually turn into the investigation of the homicides of the nine women.
(Emphasis added.) Subsequent to this exchange, Long made a full, explanatory confession of Virginia Johnson's murder.
The jury found Long guilty of murdering Virginia Johnson and recommended the death penalty. The trial judge found four aggravating and no mitigating circumstances, and sentenced Long to death.
Long raises ten challenges to his conviction and sentence. We need only address the confession issue since it is dispositive.
In Miranda v. Arizona, the United States Supreme Court stated that if an accused person "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." 384 U.S. at 444-45, 86 S.Ct. at 1612. This safeguard was designed "to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process." Id. at 469, 86 S.Ct. at 1625. Subsequently, the United States Supreme Court, in its decision in Edwards v. Arizona, made clear that, once an accused invokes his right to counsel, all questioning must cease and the accused is not subject to further interrogation until counsel has been provided. The Court in Edwards held that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." 451 U.S. at 484, 101 S.Ct. at 1884-85 (footnote omitted).
The question in this case is whether Long clearly asserted his right to counsel by his statement, "I think I might need an attorney." Some courts have held that this type of statement requires questioning to cease immediately. People v. Plyler, 86 Mich. App. 272, 277, 272 N.W.2d 623, 626 (1978) ("An ambiguous indication of an interest in having counsel requires cessation of police interrogation."). Compare People v. Cerezo, 635 P.2d 197, 198 (Colo. 1981) ("I think I better have a lawyer."); People *667 v. Traubert, 199 Colo. 322, 325, 608 P.2d 342, 344 (1980) ("I think I need to see an attorney."); Singleton v. State, 344 So.2d 911, 912 (Fla. 3d DCA 1977) ("Maybe I better ask my mother if I should get [an attorney]."); State v. Blakney, 185 Mont. 470, 477, 605 P.2d 1093, 1097 (1979) ("[M]aybe I should have an attorney."); Wentela v. State, 95 Wis.2d 283, 287, 290 N.W.2d 312, 316 (1980) ("I think I need an attorney," or "I think I should see an attorney."). Since Edwards, however, we have not accepted this view and have characterized similar statements as equivocal which permit an investigating official to continue questioning for the sole purpose of clarifying the equivocal request. In so holding, we made clear that, until clarified, this is the limit of the permitted inquiry. Valle v. State, 474 So.2d 796 (Fla. 1985), vacated on other grounds, 476 U.S. 1102, 106 S.Ct. 1943, 90 L.Ed.2d 353 (1986); Waterhouse v. State, 429 So.2d 301 (Fla. 1983); Cannady v. State, 427 So.2d 723 (Fla. 1983); In Cannady, we expressly stated:
When a person expresses both a desire for counsel and a desire to continue the interview without counsel, further inquiry is limited to clarifying the suspect's wishes. Thompson v. Wainwright, 601 F.2d 768 (5th Cir.1979); Nash v. Estelle, 597 F.2d 513 (5th Cir.), cert. denied, 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979).
Id. at 728-29 (emphasis supplied).
The state argues that both officers did not believe appellant's statement was a request for counsel and asserts that appellant's willingness to discuss some areas and not others after his equivocal statement clearly supports the conclusion that he voluntarily waived his Miranda rights and did not intend to terminate the interrogation to consult with counsel. That type of argument was expressly rejected by the United States Supreme Court in Edwards when that Court said, "[A] valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation... ." 451 U.S. at 484, 101 S.Ct. at 1885.
The statement, "I think I might need an attorney," was, in our view, equivocal, but it did put the police officers on notice that the only permissible further questioning would be questions attempting to clarify Long's request for counsel. The record is clear, however, that the investigating officers did not attempt to clarify the equivocal request for counsel, but continued to interrogate Long to obtain the eventual confession. We are bound by the United States Supreme Court decisions in Miranda, Edwards, and Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), which we conclude mandate suppression of Long's confession. Without this equivocal request for counsel, we would find this confession voluntary and admissible. Miranda and Edwards, however, establish a bright line test that controls this case and requires suppression of the confession.
Accordingly, we vacate the conviction and sentence and remand for a new trial.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.