529 So.2d 286 (1988)
Robert Joe LONG, a/k/a Bobby Long, Appellant,
v.
STATE of Florida, Appellee.
No. 69259.
Supreme Court of Florida.
June 30, 1988.
Rehearing Denied August 26, 1988.
*287 Ellis S. Rubin and David M. Rappaport of Ellis Rubin Law Offices, P.A., Miami, for appellant.
Robert A. Butterworth, Atty. Gen. and James A. Young, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Robert Joe Long appeals the validity of his guilty pleas to multiple first-degree murders and related offenses in Hillsborough County and the imposition of a death sentence after a penalty phase proceeding in accordance with a jury recommendation. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We recently reversed appellant's first-degree murder conviction and death sentence for a similar offense committed in Pasco County. Long v. State, 517 So.2d 664 (Fla. 1987). Evidence in both cases arose in part from the same confession given to law enforcement officials by the appellant. We find the guilty plea valid and affirm the multiple life sentences, as well as the sentence for the probation violation imposed as part of the agreement. However, we find it was error to use the prior Pasco County conviction as an aggravating circumstance in the penalty phase proceeding in view of our subsequent reversal of the Pasco County conviction. Consequently, we remand only for a new death sentencing proceeding.
As in our prior Long decision, the record reflects that Robert Long was arrested on November 16, 1984, and charged with the sexual battery and kidnapping of Lisa McVey. Long signed a form Miranda[1] waiver and consented to questioning. After the detectives procured a confession for the McVey case, their questioning focused on a series of unsolved sexual battery homicides pending in the area. As the detectives began to question Long about the murders, he replied, "I'd rather not answer that." The detectives continued the interrogation and handed Long photographs of the various murder victims. At this point, Long stated, "The complexion of things sure have changed since you came back into the room. I think I might need an attorney." No attorney was provided and Long eventually confessed to eight murders in Hillsborough County and one murder in Pasco County.
Subsequently, on April 22, 1985, Long was tried for the Pasco County murder, where a jury returned a guilty verdict and a unanimous recommendation of death on April 27, 1985. The trial judge subsequently imposed a death sentence on May 10, 1985.
The Hillsborough County cases, in which the appellant was charged with multiple sexual battery and homicide offenses, were ready for trial in September, 1985. On September 23, 1985, Long entered into a *288 plea agreement with the state for all the offenses charged in Hillsborough County.[2] In summary, Long pleaded guilty to eight counts of first-degree murder, eight counts of kidnapping, and seven counts of sexual battery. In addition, Long pleaded guilty to charges of sexual battery and kidnapping in the Lisa McVey case. Under the agreement, except for the first-degree murder, kidnapping, and sexual battery counts in the Michelle Denise Simms murder, Long received life sentences on every count of each case and a five-year sentence on the probation revocation charge. The plea agreement provided for a full penalty phase proceeding before a jury in the Simms case and contained an express provision waiving Long's right to contest the admissibility of any statements he had given police. In the agreement Long also expressly waived the right to contest the admissibility of a knife found near his residence and other evidence seized from his car and apartment. The state agreed not to utilize any of the Hillsborough convictions resulting from this plea agreement as aggravating factors in the penalty phase of the Simms case, but retained the right to use prior convictions obtained in other counties as aggravating factors. After appropriate inquiry in open court, the trial judge, on September 23, 1985, adjudicated Long guilty and pronounced sentence in each case except the Simms murder charge, which was set for a penalty phase proceeding.
On December 11, 1985, Long moved to withdraw from the plea agreement based on the unavailability of a crucial defense witness and his earlier misunderstanding regarding his right to appeal the confession's admissibility. A hearing was held on the motion, during which the appellant testified as follows:

*289 Dr. Morrison was the key to this thing as far as I was concerned. She was the main ingredient to the defense when I pleaded, with this plea bargain that took place a month or so ago.
... .
My counsel advised me that she would be here. I went on what my counsel told me. They were mistaken. They were wrong. I don't know. But I know that they told me something that has not come about. I have no faith in anything in this thing now. I have no faith in my counsel. I have no faith in the doctors. I don't know what to do.
He continued, regarding his right to appeal the confession, by stating:
Back before this thing, before I pleaded, I was under the impression that further appeals as to my confession would not be jeopardized, that I was not giving up the right to appeal that suppression of the confession. I found out Monday, just this past Monday, that, indeed, that was a part of the deal with the plea. That I am giving up all appellate rights to challenge this confession. At the time I made the plea agreement, I wasn't aware of this.
It should be noted that this proceeding took place while the judge was attempting to seat the penalty phase jury. The trial court, after hearing the testimony on the plea, determined that appellant should be allowed to withdraw his previously entered guilty pleas.[3]
Following the trial judge's ruling, counsel for the appellant stated:
As I understand it, the Court has authorized the defendant to make an election whether he wishes to continue on his previously-entered pleas of guilty or affirmatively wishes to elect to withdraw them. As I understand it subject to the Court, that decision still rests with the defendant at this point?
The court agreed and subsequently, with the state's consent, granted Long a twenty-four-hour continuance. On the following day, December 12, 1985, the appellant elected not to withdraw his previously entered pleas of guilty. The judge conducted a full inquiry of the appellant concerning his decision in open court. The transcript of the proceedings reflects the following:
THE COURT: All right, sir. Is it your intention to, not to withdraw your guilty pleas and to reiterate the plea agreement that was previously entered into and read into the court record by this Court at an earlier date?
THE DEFENDANT: Yes, sir.
THE COURT: All right, sir. Have you had time to seriously consider the consequences of that withdrawal of your *290 motion to actually withdraw your previously-entered plea of guilty? Have you thoroughly discussed it with your attorney?
THE DEFENDANT: Yes, sir. That is about all I have thought about for the last forty-eight hours.
THE COURT: I can presume so. Do you feel that you have confidence in the advice that has been given to you by Mr. O'Connor and any of his associates from the Public Defender's Office?
THE DEFENDANT: Yes, sir.
THE COURT: All right, sir. Do you feel that it's in your personal best interest, after thinking about it over this period of time, to reiterate the plea agreement that was previously entered into?
THE DEFENDANT: Yes, I do.
... .
THE COURT: All right, sir. Another point that was at issue was, that you were concerned about, was a preservation of your right to appeal the matter of the confession.
THE DEFENDANT: Yes, sir.
THE COURT: There was a great amount of discussion on that yesterday.
Do you understand, sir, that if I allow this plea bargaining to go forward ... that you are giving up your right to appeal on any issues in these matters?
Do you understand that, sir?
THE DEFENDANT: On any issues?
THE COURT: On any issues, yes, sir.
THE DEFENDANT: I wasn't aware of that.
MR. BENITO [DEFENSE ATTORNEY]: On any issues as to... this particular plea agreement, if any appellate issues arise in the second phase, you can appeal that.
THE DEFENDANT: Okay.
THE COURT: Obviously. Maybe I misworded it. Anything that is behind us.
THE DEFENDANT: Okay.
THE COURT: We are not talking about the punishment issue we are going to try this week.
THE DEFENDANT: Yes, sir, I understand that.
THE COURT: Especially, the matter of the confession, that you are waiving your right to appeal that.
Do you understand, sir?
THE DEFENDANT: Yes. Yes, I do.
THE COURT: All right, sir. Also, one of the issues that you mentioned yesterday was that you felt that you based your agreement to the plea bargain on the fact that you would have a forensic psychologist, Doctor Helen Morrison, specifically, in this case, here to testify as a keystone witness for you at this second phase of this trial. I believe that is what you indicated to me.
THE DEFENDANT: Yes, sir.
THE COURT: I made comments on that, too. Do you understand, sir, that there is no guarantee when we come to the trial of the second phase of this case involving Michelle Simms, that this plea agreement is not based on a guarantee of a forensic psychologist being one of your expert witnesses at this penalty phase whenever it's heard.
Do you understand that?
THE DEFENDANT: Yes, I do.
THE COURT: All right, sir. So that would not be an issue at any other time. Do you understand?
THE DEFENDANT: Yes.
At the time of the plea, Long had already been tried and sentenced to death for the Virginia Johnson murder. The new sentencing proceeding was set for July 9, 1986. Before those proceedings began, appellant's new counsel filed a motion to again set aside the plea agreement on the grounds that the plea agreement was based upon circumstances directly affecting Long's rights. Specifically, counsel claimed the plea agreement provided for a waiver of the right to contest the admissibility of unconstitutionally obtained statements and evidence. Further, counsel argued that the plea agreement directly affected appellant's right to a fair penalty phase proceeding, because the agreement expressly provided for the introduction into evidence of Long's confession and the knife *291 discovered pursuant to the confession. The trial court denied the motion to set aside the plea agreement.
The penalty phase proceedings commenced on July 10, 1986, and the state presented evidence of Long's confession with regard to the killing of Michelle Denise Simms and Virginia Johnson. The state also submitted a certified copy of the judgment entered in Pasco County for the Johnson murder. The state presented testimony by two expert witnesses, who concluded that Long, at the time of the Simms murder, was not under the influence of extreme mental or emotional disturbance, nor was his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law substantially impaired. One of the state's experts did testify that when the appellant killed his victim, he was also unconsciously killing his mother by extension.
The appellant presented testimony from four expert witnesses who stated Long was under the influence of extreme mental or emotional disturbance at the time of the murders and was unable to conform his conduct to the requirements of law. The evidence reflected that appellant led an extremely troubled family life, had suffered numerous head injuries, which had led to brain damage and severe mental problems. The advisory jury recommended the death penalty by a vote of eleven-to-one.
The trial judge, in imposing sentence, found four aggravating circumstances: (1) previous conviction of a violent felony, including, specifically, that Long had "previously been convicted of the first-degree murder of Virginia Johnson in Pasco County, Florida"; (2) the murder was committed in commission of a kidnapping; (3) the murder was heinous, atrocious, and cruel; and (4) the murder was cold, calculated, and premeditated. The trial court found two mitigating circumstances had been established: (1) the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance; and (2) the appellant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. In so holding, the trial court stated:
There is no question in the court's mind that for some period of time prior to the murder of Michelle Denise Simms that the defendant, Robert Joe Long, had had serious mental and/or emotional problems. The history of this defendant's development as a human being shows with stark clarity the effect that parental actions and physical trauma to the brain of a person can have on his subsequent actions and his interactions with other members of society.
The court, however, found the statutory aggravating circumstances "far outweigh the two mitigating circumstances determined by the court to have been firmly established," and concluded "the facts justifying the imposition of the death penalty are so clear and convincing that virtually no reasonable person could differ with this conclusion."
Long raises four issues in this appeal. He contends the trial court erred by: (1) denying his motion to vacate the plea agreement; (2) admitting in the penalty phase proceedings the confession and knife found pursuant to the confession; (3) denying his motion for a continuance; and (4) imposing the death penalty.

Validity of the Plea
Appellant claims the trial court erred by refusing to vacate the plea agreement. Florida Rule of Criminal Procedure 3.170(f) provides:
Withdrawal of Plea of Guilty. The court may, in its discretion, and shall upon good cause, at any time before a sentence, permit a plea of guilty to be withdrawn... .
A plea of guilty is both a confession of guilt in open court and an agreement for the entry of a conviction. See Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Williams v. State, 316 So.2d 267 (Fla. 1975). Appellant does not argue that his plea was involuntary, that he did not understand the nature of the charges, or that the plea lacked a factual basis. Instead, Long asserts that the plea should be set aside because the agreement *292 was entered into "inadvisedly and the defendant [Long] could not possibly receive a fair sentencing phase trial under the plea agreement."
The principal point of appellant's argument is that, because the confession's admissibility was in question, the plea agreement must be invalidated. We disagree. In this case, appellant received multiple life sentences for each of the other seven murders and eight sexual battery offenses with which he was charged in Hillsborough County, all but one of which were concurrent sentences, and an agreement not to use those convictions in the penalty phase of this proceeding. Appellant entered the plea after extended discussions with counsel and the court. On its face, the plea agreement reflects that the number of possible offenses in Hillsborough County for which a death sentence could be imposed was reduced from seven to one. The record clearly reflects that appellant made an informed choice with full knowledge that the admissibility of the confession was an issue to which he was waiving his appeal rights.
The guilty plea itself is a confession. Appellant is arguing that, because the confession entered into on November 16, 1984, was later invalidated, see Long v. State, 517 So.2d 664 (Fla. 1987), the confession by guilty plea entered on December 12, 1985, should also be declared invalid. In Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), the United States Supreme Court rejected Parker's claim that his plea was involuntary because it was made on the advice of his counsel who thought his prior confession was admissible. Parker, who was charged with burglary and rape, had confessed and later entered a guilty plea. He contended that his guilty plea was invalid because the plea was the product of a coerced confession that was obtained in clear violation of Miranda. The Supreme Court stated Parker's position as follows:
On the assumption that Parker's confession was inadmissible, there remains the question whether his plea, even if voluntary, was unintelligently made because his counsel mistakenly thought his confession was admissible. As we understand it, Parker's position necessarily implies that his decision to plead rested on the strength of the case against him: absent the confession, his chances of acquittal were good and he would have chosen to stand trial; but given the confession, the evidence was too strong and it was to his advantage to plead guilty and limit the possible penalty to life imprisonment. On this assumption, had Parker and his counsel thought the confession inadmissible, there would have been a plea of not guilty and a trial to a jury. But counsel apparently deemed the confession admissible and his advice to plead guilty was followed by his client. Parker now considers his confession involuntary and inadmissible. The import of this claim is that he suffered from bad advice and that had he been correctly counseled he would have gone to trial rather than enter a guilty plea. He suggests that he is entitled to plead again, a suggestion that we reject.

Id. at 796 (emphasis added; footnotes omitted). Further, we note that in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), the Supreme Court held that a guilty plea, motivated by existence of a coerced confession, was not subject to a collateral attack if the defendant had counsel unless counsel was incompetent. There is no question from our review of this record that appellant's decision to plead guilty, after consulting with his attorney, was a tactical decision. Under this plea agreement, if counsel could obtain a jury recommendation of life because of appellant's mental problems, a life sentence could probably be sustained and appellant would not be subject to be tried for any other offenses in Hillsborough County for which the death penalty could be imposed. We find no basis in this record to show that appellant's counsel was incompetent or ineffective. Under the facts, the plea agreement was clearly voluntary and entered with appellant's full understanding that he was expressly waiving his right to challenge the confession's admissibility. To accept appellant's argument would mean that *293 there never could be an express waiver of prior legal challenges in pretrial matters by a guilty plea.[4] As reiterated above, that is not the law. Since we have upheld the validity of the plea, appellant's other related claims are without merit.

Validity of Sentencing Proceedings
Our recent decision in Long v. State, 517 So.2d 664 (Fla. 1987), was submitted as supplemental authority. In that decision, we reversed Long's conviction for the Pasco County murder of Virginia Johnson based on the inadmissibility of his confession. Evidence of the Virginia Johnson murder and appellant's conviction for that offense was presented to the jury in this penalty phase proceeding. That evidence was presented to the jury as an aggravating factor and utilized by the trial judge in his first aggravating circumstance. We have expressly held that a conviction used as an aggravating circumstance, which is valid at the time of the sentence but later reversed and vacated by an appellate court, results in an error in the penalty phase proceeding. The reversal eliminates the proper use of the conviction as an aggravating factor. See Oats v. State, 446 So.2d 90 (Fla. 1984). The Johnson conviction was the only prior murder conviction available for use in the sentencing proceeding, although there were other criminal convictions of violent crimes presented in the penalty phase.
Eliminating the Pasco County murder as an aggravating factor changed the factual circumstances that could properly be considered by both the jury and the judge. Given this circumstance, and the fact that the trial court found two firm statutory mitigating circumstances concerning Long's mental condition, we must decide the question posed in Elledge v. State, 346 So.2d 998 (Fla. 1977): Would the result of the weighing process by both the jury and the judge have been different had the prior murder conviction not been used as an aggravating circumstance? In answer to this question, we find we are unable to say there is no reasonable probability that the elimination of this factor would change the weighing process of either the jury or the judge, particularly in view of the mitigating circumstances. See, e.g., Dragovich v. State, 492 So.2d 350 (Fla. 1986); Dougan v. State, 470 So.2d 697 (Fla. 1985), cert. denied, 475 U.S. 1098, 106 S.Ct. 1499, 89 L.Ed.2d 1098 (1986); Elledge v. State. Under the particular facts of this case, we are compelled to conclude appellant is entitled to a new sentencing proceeding.
Accordingly, we affirm all of appellant's convictions and each of the sentences imposed except the death sentence imposed for the murder of Michelle Denise Simms, which we vacate and remand for a new sentencing proceeding before a new jury.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., concurs in result only in the convictions, but concurs with the sentence.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The plea agreement reads, in pertinent part:

The State and Defense do hereby stipulate to the following plea negotiations in the above-styled cases subject to the Court's approval.
In exchange for Defendant's pleas of guilty to the following case numbers the State would recommend to this Court the following plea negotiations:
[Paragraphs 1 through 9 of the plea agreement set forth the sentences agreed to for nine separate incidents that include seven murders, eight sexual batteries, eight kidnappings, and one probation violation. The agreement provides that two life sentences in the first incident would be concurrent with each other but would be consecutive to one life sentence without the possibility of parole for twenty-five years, each of these sentences arising out of the first incident. All remaining sentences were concurrent with this sentence.]
10. Case Number 84-13346B (victim  Michelle Denise Simms)
Defendant will plead guilty to all three counts of said Indictment. The Court will withhold imposition of sentence on all three counts until the completion of a second phase proceeding before a jury empaneled for that specific purpose. After an advisory sentence is recommended by said jury, this Court will impose a sentence of death or life without the possibility of parole for 25 years as to count III of said Indictment 84-13346B.
The parties further stipulate and agree as follows:
1. Defendant waives his right to contest the admissibility of any statements he has given law enforcement and such statements are admissible at the sentencing hearing in Case Number 84-13346-B if otherwise relevant;
2. Defendant waives his right to contest the admissibility of evidence seized from his car or at or near his apartment, and specifically waives his right to contest the admissibility of a knife found in a wooded area near his apartment in the sentencing hearing in Case Number 84-13346-B;
3. To the extent any sentence imposed as to any plea of guilty as to any count contained in this agreement, the parties recognize the negotiations may require sentences which depart from the sentencing guidelines, and specifically agree to departure from the guidelines and to waive any issues caused by such departures;
4. The manner of voir dire of the sentencing phase jury is to be determined by the Court;
5. The number of peremptory challenges to the sentencing phase jury panel is to be determined by the Court;
6. The State of Florida shall not rely upon the pleas of guilty entered in any other case in the Thirteenth Judicial Circuit as aggravating circumstances in Case Number 84-13346-B, but may introduce into evidence and rely upon any other conviction of the defendant previously obtained, including those in Pasco, Pinellas, and Orange Counties;
7. Upon acceptance of pleas of guilty to Counts I and II of Case Number 84-13346-B, the sentences imposed on the defendant as to those counts shall run concurrently to the sentence imposed on Count III of that indictment.
[3] The trial judge stated:

But I believe that there is a mistake on his part or a misapprehension. It's uncontroverted he felt that Dr. Morrison was going to be here to speak on his behalf.
That was one of the basis this Court finds for him entering into this plea agreement. That was a misapprehension on his part. No misapprehension at the time of entering into the plea, but he was under the belief, it is this Court's finding, that she would be here or someone of her stature.
For reasons unconnected with the defendant and really with the Public Defender's Office, Dr. Morrison, and we have reviewed all of that  it's on the record  has chosen not to be here. I believe that is a key element in granting the motion which I am going to do.
I am going to grant the defendant's motion to withdraw or for permission to withdraw his previously-entered pleas of guilty.
I believe Mr. O'Connor made another telling point that I also was going to comment on, that he knows by withdrawing this and by my granting of the motion, he is now laying himself open, unless future plea agreements are worked out, to potential eight death penalties. And I think that would be a strong factor to prohibit him from asking his attorney to file this motion for permission to withdraw the guilty pleas. It substantially even dangers [sic] his future life, and I believe it is another factor which indicates to me the truth of the matter that his entry into this plea agreement was based on, among other things, two factors: That he would have the right to appeal on the matter of the confession, and that he would have someone like Dr. Morrison here to speak on his behalf at the penalty phase of the trial.
Therefore, the motion for permission to withdraw previously-entered pleas of guilty is granted.
With the granting of that motion I believe that it terminates further activity with this particular jury that we have spent so much time trying to seat.
[4] We are not dealing with an automatic waiver that results from a guilty plea when there is no express reservation of a right to appeal some prior trial court action. We addressed the automatic waiver rule with regard to death penalty cases in Muehleman v. State, 503 So.2d 310 (Fla.), cert. denied, ___ U.S. ___, 108 S.Ct. 39, 98 L.Ed.2d 170 (1987).

The instant case involves an express waiver, both in the written plea agreement and in open court, and, consequently, our decision in Muehleman does not apply.