PER CURIAM.
Bradley Calixte was indicted along with other co-defendants for first degree murder, armed robbery, and conspiracy to commit armed robbery. It was alleged that Calixte was asked by a co-defendant to lend his shotgun to commit a robbery, and that Calixte and the other defendants robbed the LaPerle Grocery Store. The owner of the store, Adelphin Georges, was shot and killed during the robbery. On that same day, Calixte was detained by two police officers and agreed to answer questions. He was taken to Officer McCully’s office, but was not under arrest at that time.
Approximately one hour later, McCully saw Calixte in his office and informed him of his constitutional rights using a Miranda [1] Rights Warning Sheet. Calixte stated that he had a seventh-grade education, but that he could read and write English.[2] Calixte initialed the appropriate boxes in the Miranda Rights Warning Sheet and signed the bottom of the form, signifying he understood his constitutional rights.
After a one hour initial interview, which resulted in an oral confession by Calixte as to his participation in the crime, Calixte was placed under arrest for robbery and murder. A stenographer was then brought in to take a sworn statement from Calixte. Prior to the start of the second interview, Calixte was again informed of his constitutional rights. During the questioning as to whether Calixte understood his constitutional rights, the following partial colloquy occurred:
Q: Let’s finish your rights. “No. 4. If you cannot afford to pay for a lawyer, one will be provided for you at no cost if you want one.” Do you understand that right?
[[Image here]]
A: Yeah.
Q: Knowing these rights, are you now willing to answer my questions without having a lawyer present?
A: I don’t have no lawyer.
Q: We understand that.
A: I ain’t going to sign that paper because I ain’t got no lawyer.
Q: The question is, knowing the rights as detective McCully has just explained *976 to you up here are you now willing to answer any of our questions without having a lawyer present here?
A: That’s what I'm saying. I won’t sign a paper because I ain’t got no lawyer.
Q: Do you understand that question? Do you want to talk to us without having a lawyer present? Do you understand what that means?
A: Yeah, you all know the reason.
Q: No. Listen—
A: That’s what I’m saying.
Q: No, listen to me and then if you don’t understand, I’ll explain it to you because I want to make sure that you understand. Listen to me. Knowing the rights that he just told you up here are you now willing to answer the questions without having a lawyer present? Yes or no?
A: [no response]
Q: Do you want to answer the question, yes or no?
A: [shakes his head]
Q: Yes or no?
A: Yeah.
Q: Now, did you place your initials in the block where it says “Yes”?
A: Yes.
After placing his initials in the appropriate boxes, Calixte was unwilling to sign the form, but eventually did so after being prodded by the interrogating officers. McCully testified that neither he nor the other interrogating officer shouted at Ca-lixte or made any bodily threats to him. At the end of the sworn statement, Calixte stated that everything he said was true and correct to the best of his knowledge and that his statement was given freely.
The trial court held a hearing on Ca-lixte’s motion to suppress the sworn statement. The motion was denied and after a jury trial, Calixte was found guilty as charged. On appeal, Calixte argues that the trial court erred in not suppressing his second statement, which was the sworn statement, because he made a prior unequivocal request for an attorney and, accordingly, all subsequent questioning by the police should have stopped at that point. We find merit in this contention and agree that the sworn written statement should have been suppressed.
The State argues that Calixte’s requests for an attorney were equivocal at best and that the questions posed by the police in response to his requests were only for the clarification of these “equivocal” requests. Upon review of the record, we cannot find support for the State’s argument. The colloquy that occurred between Calixte and the police, in connection with the sworn statement, clearly reflects that Calixte did not wish to proceed without a lawyer.
It is true that when an accused person is advised of his constitutional rights and makes an equivocal request for counsel, the only permissible questioning allowed by police is to clarify the suspect’s wishes. Until clarified, that is the limit of the permitted inquiry. Long v. State, 517 So.2d 664 (Fla.1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988); Valle v. State, 474 So.2d 796 (Fla.1985), vacated on other grounds, 476 U.S. 1102, 106 S.Ct. 1943, 90 L.Ed.2d 353 (1986). In this case, however, a review of the partial colloquy clearly shows, contrary to the State’s argument, that Calixte’s request for an attorney was unequivocal. Calixte’s statement to police, “I ain’t got to sign that paper because I ain’t got no lawyer,” and again, “I won’t sign a paper because I ain’t got no lawyer,” were clear indications that he was refusing to proceed with the questioning absent the presence of a lawyer. Further, the prodding of the police officer was not designed to clarify the situation, as the State argues, but rather, to take the Calixte’s attention away from the fact that he wanted a lawyer, and direct it back to the specific questions being posed by the police officers. As stated by the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 707 (1966), there can be no questioning when an accused person “indicates in any manner and at any stage *977 of the process that he wishes to consult with an attorney before speaking.” The Court further held that, until a lawyer has been provided, all questioning must cease once the accused invokes his right to counsel. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
For these reasons, we hold that it was error for the trial court to deny Calixte’s motion to suppress the sworn statement. Calixte’s oral statement, given prior to the sworn written statement in question, has not been challenged on appeal and is not affected by this opinion.
Reversed.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. We note one of Calixte’s contentions on appeal is that his intelligence is subnormal and that this subnormality negatively affected the admissibility of his sworn statement. Although this Court does find evidence of Calixte’s subnormality in the record, we do not find this to be dispositive upon our reversal. "The fact of mental subnormality or impairment alone does not render a confession involuntary.” Thompson v. State, 548 So.2d 198 (Fla.1989) (citing Ross v. State, 386 So.2d 1191 (Fla.1980)).