619 So.2d 255 (1993)
Newton Carlton SLAWSON, Appellant,
v.
STATE of Florida, Appellee.
No. 75960.
Supreme Court of Florida.
April 1, 1993.
Rehearing Denied May 26, 1993.
*256 Simson Unterberger, Tampa, for appellant.
Robert A. Butterworth, Atty. Gen., and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Newton Carlton Slawson appeals his convictions of four counts of first-degree murder and one count of killing an unborn child by injuring the mother and sentences, which include four death sentences. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm the convictions and sentences.
The following facts were developed at trial. On April 11, 1989, Peggy Williams Wood, her husband Gerald, and their two children, Jennifer, age four, and Glendon, age three, were murdered in their home. Also lost was the eight and one-half month fetus that Peggy Wood was carrying. At the time of the murders, the Wood family was living in a garage apartment next to Peggy Wood's parents' home in Hillsborough County. Around 10:00 p.m. on April 11, Peggy Wood was discovered lying on her parents' back porch. She had been shot twice, once in the abdomen and once in the back, and cut from the base of the sternum to the pelvic area. Her right thigh also had been cut several times. Still conscious, Peggy told her mother, "He killed Gerry and the kids." When asked "who," Peggy answered, "Newton did it. Newton killed Gerry and the kids." Peggy Wood died a short time later.
Gerald Wood and the two children were found dead upstairs in the couple's apartment. All three died as a result of gunshot wounds. Gerald Wood had been stabbed in the abdomen after dying from a gunshot wound to the back that entered the heart. At the foot of the couch where Gerald's body was found the body of the couple's unborn baby was discovered. The fetus had two gunshot wounds and several lacerations all of which were caused by the injuries to the mother.
Slawson was apprehended later that night. A .357 revolver, which was later determined to be the murder weapon, was found in his automobile. A magazine with *257 incisions drawn on the abdominal area of nude women also was found.
After his arrest, Slawson told detectives that he went to the Woods' residence on the day of the murders. He took a six inch knife and a .357 revolver. At Gerald's request, Slawson put the gun in the bathroom so the children would not get it. He gave the knife to Gerald Wood to use to cut rock cocaine. Gerald Wood offered to sell Slawson some of the cocaine but Slawson refused the offer. When Peggy said Slawson might be the police, Slawson went to the bathroom to get his gun so he could leave. When Slawson returned, Gerald Wood got up with the knife in his hand. According to his statement, Slawson shot Gerald and may have shot Peggy at that time. As Slawson proceeded to the children's bedroom and shot them, Peggy Wood was screaming. After shooting the children he returned to the living room and shot Peggy again. Slawson then inserted his knife into Peggy Wood's abdomen and cut upward, causing the fetus to be expelled.
Slawson testified at trial that he believed he killed the Wood family but did not remember doing it. He believed that Gerald Wood had put drugs in his beer, causing him to feel odd and to believe he was locked in the apartment. He remembered stabbing Gerald and standing in the kitchen with the gun in his hand. He remembered determining that Gerald and Peggy were dead and trying to save the baby by making the incision into Peggy's abdomen. According to his testimony, when Slawson determined that the baby was not going to survive, he left intending to commit suicide. However, he later returned to the scene to see if he had, in fact, killed the family and was arrested soon thereafter.
Slawson further testified about his "habit" of drawing incisions on pictures of nude women. He explained that he began drawing pictures of mutilated bodies when he was eleven years old. For years, Slawson had lived with a "mental quirk" causing him to continuously think about disemboweling women. While in the Navy, Slawson discussed his problem with a psychologist, who told him the practice of drawing was "a useful tool for actualizing his aggressive tendencies" without actually harming anyone. According to Slawson, the psychologist told him to continue to draw but not to identify the pictures with anyone and to destroy the magazines after he drew on the pictures.
Slawson was found guilty of four counts of first-degree murder and one count of killing an unborn child by injury to the mother. Slawson was sentenced to thirty years imprisonment for manslaughter of the unborn child. In accordance with the jury recommendation, Slawson was sentenced to death for each of the first-degree murders. The trial court found in aggravation as to each of the four murders that Slawson had been convicted of the three other capital felonies. As to the murder of Peggy Wood, the trial court found that the murder was especially heinous, atrocious or cruel. The trial court found the following statutory mitigating factors: 1) no significant history of criminal activity, although from Slawson's admissions and statements to mental health experts Slawson used illegal drugs habitually for years; 2) in the opinion of a defense expert, Slawson's capacity to conform his conduct to the requirements of law was substantially impaired; and 3) in the opinion of a defense expert, the murders were committed while Slawson was under the influence of extreme mental or emotional disturbance. As nonstatutory mitigating factors the court found that Slawson was abused as a child and he was capable of acts of kindness and could be a friendly person. Slawson appeals both his convictions and sentences.
Slawson raises two claims in connection with the guilt phase of his trial. First, he argues that his statement to police should have been suppressed because it was taken in violation of the principles set forth in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Our review of the record supports the trial court's denial of the motion to suppress.
Detectives Grossi and Bell interviewed Slawson soon after his arrest. Prior to the *258 detectives' contact with Slawson, he had not been given Miranda[1] warnings. When the detectives entered the interrogation room, they advised Slawson that they were investigating a homicide. Slawson immediately responded, "What about an attorney?" Treating the statement as a question, the officers told Slawson they would explain about an attorney. Officer Bell then read the consent to be interviewed form to Slawson, stopping after each sentence to ascertain whether Slawson understood. After the form was read, Slawson again indicated that he understood, stated that he was willing to talk to the officers, and signed the form. At no time during the interview did Slawson indicate that he did not want to talk to the detectives or that he wished to have an attorney present. After Slawson had given his statement, he was asked if he would like his statement taped. Slawson again responded "What about an attorney?" and the interview was concluded.
In Edwards v. Arizona, the United States Supreme Court made clear that once an accused invokes the right to have counsel present during custodial interrogation, all questioning must cease until counsel has been provided. After the right has been invoked, a valid waiver cannot be established by merely showing that the accused responded to further police-initiated interrogation even if the accused was given further Miranda warnings. 451 U.S. at 484, 101 S.Ct. at 1884; Long v. State, 517 So.2d 664, 666 (Fla. 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988). However, where a request for counsel is equivocal, the police are permitted to initiate further communications for the sole purpose of clarifying the equivocal request. See Long, 517 So.2d at 667; Valle v. State, 474 So.2d 796, 799 (Fla. 1985), vacated on other grounds, 476 U.S. 1102, 106 S.Ct. 1943, 90 L.Ed.2d 353 (1986); Waterhouse v. State, 429 So.2d 301, 305 (Fla.), cert. denied, 464 U.S. 977, 104 S.Ct. 415, 78 L.Ed.2d 352 (1983); Cannady v. State, 427 So.2d 723 (Fla. 1983). Slawson's question "What about an attorney?" asked prior to being advised of his rights was at best an equivocal request for counsel.[2] Reading the consent form to the defendant and insuring that he understood his rights was proper clarification of the request. See Aycock v. State, 528 So.2d 1223 (Fla. 2d DCA) (giving of Miranda warning proper clarification of equivocal request for counsel), review denied, 536 So.2d 243 (1988). Slawson does not take issue with the fact that after having his rights thoroughly explained, he freely and voluntarily waived the presence of counsel. Therefore, the motion to suppress was properly denied.
We also reject Slawson's second claim that it was fundamental error for a State expert witness to testify that in his opinion the insanity and impairment defenses are a charade. Slawson's defense was lack of capacity to form a premeditated intent to kill because of cocaine and alcohol intoxication. Two mental health experts testified for the defense that in their opinions Slawson's acute intoxication rendered him incapable of premeditating. To rebut this testimony, the State called Dr. Stanton Samenow. On direct examination Dr. Samenow testified that, based on a long-term study he had conducted, it is virtually impossible to reconstruct the mental state of a defendant at the time of the crime. He explained that the study indicated that people who had been adjudicated not guilty by reason of insanity were "not mentally ill at all, but that the insanity defense had been a charade by which they calculatingly were able to get into a hospital rather than go to prison."
This entire line of questioning proceeded without objection. Rather than objecting to the testimony, defense counsel attempted to rebut the testimony both by offering expert testimony that a defendant's state of mind could be reconstructed and by *259 cross-examining Dr. Samenow on the subject. In fact, it was defense counsel who elicited Dr. Samenow's opinion on "impairment defenses" in general. On cross-examination, defense counsel asked, "Is it fair to say that your basic position is that mental health defenses are a sham?" Dr. Samenow replied, "I'm hesitating at the words `mental health defenses.' I would say that the insanity defense and the, um, impairment defense is [sic] essentially a charade."
We do not approve of the admission of expert testimony that a legally recognized defense is "a charade." Such is not a proper subject on which to elicit an expert's opinion. However, the issue has not been preserved and we cannot agree that Slawson was deprived of a defense. Cf. Carter v. State, 469 So.2d 194 (Fla. 2d DCA 1985) (fundamental error to give inherently misleading self-defense instruction that is an incorrect statement of law and that has the effect of negating defense). Slawson was given an opportunity to rebut Dr. Samenow's testimony and a proper instruction was given on the defense of intoxication.
Slawson does not challenge the sufficiency of the evidence in connection with his convictions. However, our review of the record reveals competent substantial evidence to support the convictions.
The following claims are raised in connection with the penalty phase: 1) it was error for the trial court to consider the helplessness, defenselessness or age of the victims of the prior capital felonies; 2) the mitigating circumstances outweigh the aggravating circumstance found in connection with the murders of Gerald, Glendon, and Jennifer; 3) it was error to use evidence of illegal drug use elicited from Slawson's mental health experts to negate the mitigating circumstance of no significant history of prior criminal activity; and 4) it was error to deny the requested special penalty phase instructions. We reject each of these claims.
In connection with each of the murders, the trial court found in aggravation the convictions of the other three capital felonies, pursuant to section 921.141(5)(b), Florida Statutes, (1989). The trial court noted in its sentencing order that it considered not only the fact that there were prior convictions but also the facts of the capital offenses. In weighing the aggravating and mitigating circumstances, the trial court reasoned that the fact that the aggravating circumstance of prior conviction of a capital felony includes three other murders, "including the murder [sic] of two helpless, defenseless young children, would be sufficient in itself to justify and warrant the imposition of the death penalty as to each capital felony." Slawson maintains that consideration of the facts of the prior capital felonies amounted to the improper consideration of nonstatutory aggravating factors. See Miller v. State, 373 So.2d 882 (Fla. 1979) (only aggravating factors specified in statute may be considered). We cannot agree.
This Court has held that evidence of the circumstances of the prior offense may be considered in making an initial finding of the existence of this aggravating factor. See, e.g., Stewart v. State, 558 So.2d 416, 419 (Fla. 1990); Mann v. State, 453 So.2d 784 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985); Brown v. State, 473 So.2d 1260, 1266 (Fla. 1985), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985); Delap v. State, 440 So.2d 1242, 1255 (Fla. 1983), cert. denied, 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984). In Elledge v. State, 346 So.2d 998, 1002 (Fla. 1977), we held that it was proper for the prosecutor to comment upon the facts of the prior offense in arguing for the death penalty. However, we have never specifically addressed whether the circumstances of the prior felony may be considered in determining the weight to be given the aggravating factor.
In addressing this issue, it must be remembered that the propriety of a sentence of death is not a function of merely tabulating aggravating versus mitigating factors. See Hargrave v. State, 366 So.2d 1, 5 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979). Rather, the sentencing determination is the result of a weighing process during which *260 each factor must be assigned a qualitative weight. Accordingly, it is only logical that record evidence[3] of the circumstances underlying the aggravating and mitigating factors may be considered in assigning a relative weight to each factor. We therefore conclude that a trial court's consideration of record evidence of the circumstances of a prior violent or capital felony in weighing that factor is not error.
Next Slawson maintains that it was error for the trial court to totally negate the mitigating circumstance of no significant history of prior criminal activity,[4] because of statements made to defense mental health experts concerning drug use. First, this factor was not totally negated. It appears from the sentencing order that the evidence of habitual drug use merely served to diminish the weight given this mitigating factor. Moreover, it is clear that the mitigating factor of no significant criminal activity may be rebutted by record evidence of criminal activity, including drug activity. Walton v. State, 547 So.2d 622, 625 (Fla.), cert. denied, 493 U.S. 1036, 110 S.Ct. 759, 107 L.Ed.2d 775 (1989); Washington v. State, 362 So.2d 658, 666 (Fla. 1978), cert. denied, 441 U.S. 937, 99 S.Ct. 2063, 60 L.Ed.2d 666 (1979). In this case, there was not only expert testimony that Slawson admitted habitually using illegal drugs, the State offered rebuttal testimony that Slawson bought and used illegal drugs and Slawson himself testified concerning his drug use. On this record, it was not error for the trial court to use this evidence to diminish the weight given this factor.
We also reject Slawson's claim that the mitigating circumstances outweigh the aggravating circumstances in connection with the murders of Gerald, Glendon, and Jennifer Wood. In connection with these murders the trial court found one aggravating factor, prior capital felony, and several mitigating factors, including two statutory mental mitigating factors.
It is apparent from the sentencing order that the single aggravating factor of three prior capital felonies was given great weight in relation to the mitigation found. As noted above, although the court found that Slawson had no significant prior history of criminal activity, that factor was given minimal weight in light of the evidence of Slawson's illegal drug use. Likewise, although the trial court listed two mental mitigating factors,[5] the court noted that they existed in the opinion of the defendant's mental health expert. This qualification of the findings indicates that the mental mitigating factors too were given little weight.
The weight to be given each of the factors found was within the province of the sentencing court. Campbell v. State, 571 So.2d 415, 420 (Fla. 1990). We find no error in the trial court's determination that the commission of four murders outweighed the mitigation noted in the sentencing order. Although Slawson does not raise a proportionality claim, we have compared this case to other capital cases and find that death is proportionately warranted for these murders.
Finally, we reject Slawson's summary challenge[6] to the trial court's refusal to give requested special penalty phase instructions three through eight. The only instruction which merits discussion is requested instruction eight which was an expanded instruction on the aggravating instruction on heinous, atrocious, or cruel, section 921.141(5)(h), Florida Statutes (1989). The record reveals that the instruction given in connection with the murder of Peggy Wood was even less detailed than *261 that found insufficient by the United States Supreme Court in Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). However, any error was harmless beyond a reasonable doubt. State v. Di-Guilio, 491 So.2d 1129 (Fla. 1986). The murder of Peggy Wood was clearly heinous, atrocious, or cruel under any definition of those terms. Thompson v. State, 619 So.2d 261, 267 (Fla. 1993) (insufficient instruction harmless error where murder was heinous, atrocious, or cruel under any definition of terms and beyond a reasonable doubt). Moreover, as was the case with the murders of Gerald, Glendon, and Jennifer there were three other capital felonies in aggravation. Despite the lack of the aggravating factor of heinous, atrocious, or cruel in connection with those murders, the jury recommended and the trial court imposed the death penalty. Therefore, we can safely say that there is no reasonable possibility the error contributed to the jury's recommendation of death.
Accordingly, the convictions and sentences of death are affirmed.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] We need not determine whether the question concerning counsel made after the statement was given was also an equivocal request for counsel because no further interrogation occurred.
[3] Because all the homicides were tried together the underlying facts of the capital offenses were part of the record in this case.
[4] Section 921.141(6)(a), Florida Statutes (1989).
[5] These factors include: 1) Slawson's capacity to conform his conduct to the requirements of law was substantially impaired, section 921.141(6)(f), Florida Statutes (1989) and 2) the murders were committed while Slawson was under the influence of extreme mental or emotional disturbance, section 921.141(6)(b), Florida Statutes (1989).
[6] This claim is summarily raised in an attempt to preserve the issues. The individual claims are not developed.