[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11942
_____

D.C. Docket No. 8:19-cv-01193-MSS-AEP


BOBBY JOE LONG,

                                                    Plaintiff-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS, WARDEN, FLORIDA
STATE PRISON, JOHN DOES, as designee of Barry Reddish, and/or Mark S.
Inch,

                                                    Defendants-Appellees.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 22, 2019)

Before ED CARNES, Chief Judge, MARCUS, and JORDAN, Circuit Judges.

ED CARNES, Chief Judge:

Bobby Joe Long kidnapped, sexually battered, and murdered Michelle Denise Simms. And at least seven more women. He brutalized others. After pleading guilty, he was convicted and sentenced to death for the Simms murder. That was more than 32 years ago. After his sentence was vacated and the case remanded, he was resentenced to death. That was more than 30 years ago.

Seven days before Long is scheduled to be executed, he filed a 28 U.S.C. § 1983 complaint in the United States District Court for the Middle District of Florida. He also filed an emergency motion for a temporary restraining order, preliminary injunction, or stay of execution to prevent the State of Florida from executing him on May 23, 2019.

## I. PROCEDURAL HISTORY

In September 1985, Long pleaded guilty to eight counts of first-degree murder, nine counts of kidnapping, eight counts of sexual battery, and one probation violation. Long v. State, 610 So. 2d 1268, 1269 (Fla. 1992). That plea included his admission that he kidnapped, sexually battered, and murdered Michelle Denise Simms. Id. The State of Florida agreed that it would not seek the death penalty for the other murders Long admitted committing. Id. A full penalty phase proceeding before a jury was held in the case involving the crimes Long committed against Simms. Long v. State, 529 So. 2d 286, 288, 291 (Fla. 1988).

2

The jury recommended the death penalty by a vote of eleven to one.  Id. at 291.

The trial court adopted that recommendation and sentenced Long to death.  Id.

On direct appeal, the Florida Supreme Court affirmed Long's convictions

and sentences except for the death sentence.  Id. at 291–93.  It concluded that

because the trial judge had found that one of Long's prior convictions qualified as

an aggravating factor, and that prior conviction had since been reversed and

vacated by an appellate court as a result of a Miranda violation, Long was entitled

to a new sentencing proceeding.  Id. at 293.  A resentencing trial was conducted

before a new jury and in a new venue.  See Long, 610 So. 2d at 1270.  The jury

recommended death, this time unanimously.  Id. at 1272.  The trial court adopted

that recommendation and imposed the death penalty.  Id.  The Florida Supreme

Court affirmed, id. at 1275, and the United States Supreme Court denied Long's

petition for a writ of certiorari, Long v. Florida, 510 U.S. 832 (1993), making his

convictions and sentences final in 1993.

Following the conclusion of his direct appeals, Long unsuccessfully sought

postconviction relief in state court three times.  See Long v. State, 235 So. 3d 293

(Fla. 2018); Long v. State, 183 So. 3d 342 (Fla. 2016); Long v. State, 118 So. 3d

798 (Fla. 2013).  Long also filed a federal habeas petition in the district court in

2013.  The district court denied that petition on the merits, and this Court denied

Long's application for a certificate of appealability.  See Long v. Sec'y, Fla. Dep't

3

of Corr., No. 16-16259 (11th Cir. Jan. 4, 2017); Long v. Sec'y, Dep't of Corr., No. 8:13-cv-02069-T-27AEP (M.D. Fla. Aug. 30, 2016).

After all of Long's attempts at postconviction relief had been resolved conclusively against him, the Florida Commission on Offender Review initiated state clemency proceedings in Long's case.  The Commission conducted proceedings and took the matter under submission in September 2018.  After the Commission reported to the Governor, he denied clemency.  Long was notified of that decision in April 2019.

The Governor signed Long's death warrant on April 23, 2019, and the Warden set the execution date for May 23, 2019.  Since then, Long has filed in the Florida courts a flurry of motions, including two motions for a stay of execution, a motion to dismiss his death warrant as defective, and a motion for postconviction relief (the fourth one he had filed).  He also filed a petition for habeas corpus in the Florida Supreme Court.  All of his motions and petitions have been denied.

On May 8, 2019, Long filed in the United States District Court for the Northern District of Florida a § 1983 complaint.  In that complaint, he claims that the State of Florida violated his federal statutory right to counsel by declining to allow his federally-appointed attorneys to appear at his interview in the state clemency proceedings and that the state-appointed attorney who was present and represented him at that interview rendered ineffective assistance of counsel in

4

violation of the Sixth Amendment.  Along with that § 1983 complaint, Long filed an emergency motion for a stay of execution.  The district court denied that motion on May 16, 2019.  On May 20, 2019, Long filed a motion for reconsideration in the district court, which it denied on May 21, 2019.

In his complaint in this § 1983 proceeding, Long raises five claims.  First, he claims that Florida's use of a three-drug protocol instead of a one-drug protocol violates the Eighth Amendment.  Second, he claims that Florida's use of etomidate as the first drug in that three-drug protocol is facially unconstitutional because it creates a risk of severe pain that is substantial when compared to the known and available alternative of using the single drug pentobarbital.  Third, he claims that even if the use of etomidate does not amount to cruel and unusual punishment in all cases, it does in his case because of his serious medical conditions (traumatic brain injury and temporal lobe epilepsy).

Fourth, he claims that the State violated his First, Fifth, Eighth, and Fourteenth Amendment rights by objecting to his requests for public records and refusing to answer his questions about the lethal injection protocol.  And finally, Long claims that the Warden violated his First, Sixth, Eighth, and Fourteenth Amendment rights by refusing his requests to: (1) have an additional attorney witness at his execution in lieu of a spiritual adviser, (2) permit Long's attorneys to have access to a phone during the execution, and (3) permit one of Long's

5

witnesses to observe the insertion of the IV line that will be used to administer the lethal drugs.

Along with his complaint, Long filed an emergency motion for a temporary restraining order, preliminary injunction, or stay of execution.  He requested that the district court order the State to hold off on his execution until the court had time to consider each of his claims (which, according to Long, would require discovery and an evidentiary hearing).

The district court denied Long's motion for a temporary restraining order, preliminary injunction, or stay of execution on May 19, 2019.  It concluded that all of Long's claims were barred by the doctrine of res judicata as a result of the Florida Supreme Court's decision in Long v. State, No. SC19-726, 2019 WL 2150942 (Fla. May 17, 2019).  For that reason, he could not show a substantial likelihood of success on the merits.  Long filed a notice of appeal the same day. On May 20, 2019, he filed in this Court a motion for a stay of execution, or in the alternative, an expedited appeal.  We granted his motion to expedite the appeal.

On May 20, 2019, Long filed two petitions for a writ of certiorari in the United States Supreme Court, each accompanied by an application for a stay of execution.  One of those petitions seeks review of the Florida Supreme Court's denial of his state habeas petition.  The other one seeks review of the Florida Supreme Court's denial of his fourth motion for postconviction relief.  In that one,

6

he raises two claims that he also raised in the § 1983 lawsuit at issue in this appeal: (1) his claim about the Warden's denial of his requests for exceptions to the Department of Corrections' witness policy, and (2) his challenge to Florida's use of etomidate in its lethal injection protocol.

## II.  STANDARD OF REVIEW

We review the district court's denial of a motion for a temporary restraining order, preliminary injunction, or stay of execution only for abuse of discretion. Gissendaner v. Comm'r, Ga. Dep't of Corr., 779 F.3d 1275, 1280 (11th Cir. 2015) (temporary restraining order); Chavez v. Fla. SP Warden, 742 F.3d 1267, 1271 (11th Cir. 2014) (preliminary injunction); Muhammad v. Sec'y, Fla. Dep't of Corr., 739 F.3d 683, 688 (11th Cir. 2014) (stay of execution).  A district court abuses its discretion if, among other things, "it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous."  Grayson v. Warden, Comm'r, Ala. DOC, 869 F.3d 1204, 1238 (11th Cir. 2017) (quotation marks omitted).

A federal court may grant a temporary restraining order, preliminary injunction, or a stay of execution only if the movant establishes that (1) he has a substantial likelihood of success on the merits, (2) he will suffer irreparable injury unless the injunction issues, (3) the injunction would not substantially harm the other litigant, and (4) if issued, the injunction would not be adverse to the public

7

interest.  Powell v. Thomas, 641 F.3d 1255, 1257 (11th Cir. 2011); see also

Gissendaner, 779 F.3d at 1280; Chavez, 742 F.3d at 1271.

## III.  DISCUSSION

### A. Long's Method of Execution Claims

The district court did not abuse its discretion in declining to stay Long's

execution on account of his three method of execution claims.  Each of them is

barred for two independently adequate reasons.  First, Long engaged in

inexcusable delay in bringing the claims, which is enough to deny him the

equitable remedy of a stay.  And second, as the district court properly held, each of

his claims is barred by the doctrine of res judicata.

### 1.  Inexcusable Delay

Long is not entitled to a stay of execution "as a matter of course" simply

because he brought a § 1983 claim.  Hill v. McDonough, 547 U.S. 573, 583–84

(2006).  Instead, a stay of execution is an equitable remedy and all of the rules of

equity apply.  See Rutherford v. Crosby, 438 F.3d 1087, 1092 (11th Cir. 2006)

(explaining that "where petitioner's scheduled execution is imminent, there is no

practical difference between denying a stay on equitable grounds and denying

injunctive relief on equitable grounds in a § 1983 lawsuit"), vacated on other

grounds, Rutherford v. McDonough, 547 U.S. 1204 (2006).

8

One of those rules is that "[e]quity must take into consideration the State's strong interest in proceeding with its judgment" and an inmate's "attempt at manipulation." Gomez v. U.S. Dist. Ct. for N. Dist. of Cal., 503 U.S. 653, 654 (1992) (per curiam). As a result, before granting a stay of execution, a court must "consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim." Nelson v. Campbell, 541 U.S. 637, 649–50 (2004). There is a "strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." Id. at 650.

The Supreme Court has reiterated the importance of these principles three times this year. The first time was in February when a stay entered by this Court was vacated by the Supreme Court. Dunn v. Ray, 139 S. Ct. 661 (2019). In vacating the stay, the Court quoted from Gomez: "A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief." Id. at 661 (quoting Gomez, 503 U.S. at 654).

And then in April, when affirming the Eighth Circuit's denial of an inmate's as-applied challenge to the State's method of execution, the Supreme Court explicitly instructed lower courts that: "Courts should police carefully against attempts to use such challenges as tools to interpose unjustified delay. Last-minute

9

stays should be the extreme exception, not the norm, and the last-minute nature of an application that could have been brought earlier, or an applicant's attempt at manipulation, may be grounds for denial of a stay." Bucklew v. Precythe, 139 S. Ct. 1112, 1134 (2019) (quotation marks omitted).

And later that same month, the Supreme Court vacated another stay of execution that this Court had issued. Its decision to vacate the stay was based on the fact that the inmate had delayed bringing his challenge to the State's lethal injection protocol until about two months before his scheduled execution, and then waited until just a few hours before that execution to submit additional evidence. Dunn v. Price, 139 S. Ct. 1312, 1312 (2019). The Supreme Court again relied on Gomez to instruct courts to consider the last-minute nature of a stay in determining whether equitable relief is appropriate. Id.

Long's case is not one of the "extreme exception[s]" in which a last-minute stay should be entered, but instead is within "the norm" where the "strong equitable presumption against the grant of a stay" applies. Bucklew, 139 S. Ct. at 1134; Hill, 547 U.S. at 584 (quotation marks omitted).

The first of Long's method of execution claims is that Florida's use of a three-drug protocol instead of a one-drug protocol violates the Eighth Amendment. But Florida has used a three-drug protocol since January 14, 2000, when it added lethal injection as a new method of execution. See Heynard v. Sec'y, DOC, 543

10

F.3d 644, 647 (11th Cir. 2014).  Long has had nineteen years to challenge the use of a three-drug protocol.  Nineteen years is too long to wait.

To the extent that Long argues that a challenge to three-drug protocols would not have been valid until now because other states have only recently begun using one-drug protocols, that argument is belied by allegations in his own complaint.  It alleges that at least four other states have "used a single-drug method for executions since 2009."  Ten years is too long to wait.

Long's other two method of execution claims also suffer from his delay in bringing them.  In those claims, he contends that Florida's use of etomidate as the first drug in its three-drug protocol is unconstitutional regardless of the health of the inmate, and that it is especially so as applied to him because of his serious medical conditions.

Florida adopted etomidate as the first drug in its three-drug protocol in January of 2017, two years and four months ago.  But Long waited until a week ago to file this § 1983 challenge to it.  Long alleges in his complaint that three of Florida's recent executions using etomidate show that the drug causes inmates severe pain because it does not properly anesthetize them.  To the extent that Long argues (and it is not clear that he does) that the delay in bringing his claims was based on facts arising from those executions, his argument is not persuasive.  The first of the three executions occurred on November 8, 2017, the second on

11

February 22, 2018, and the last of them on December 13, 2018. A delay of five months, fifteen months, or eighteen months is too long.

Long's person-specific claim is that his medical conditions will complicate Florida's use of etomidate and may cause him unnecessary pain. But Long has known about his medical conditions for decades. During his 1989 resentencing trial, he presented as mitigating evidence the testimony of two medical experts about his traumatic brain injury and temporal lobe epilepsy. See Long, 610 So. 2d at 1271–72. Any argument about how etomidate would be uniquely harmful to him could have been raised as soon as Florida adopted etomidate as the first drug in its three-drug protocol. That happened in January 2017, two years and four months before Long brought this lawsuit.

If Long had truly intended to challenge Florida's lethal injection protocol instead of just seeking to delay his execution, he would not have deliberately waited to file this lawsuit until a decision on the merits would require entry of a stay. We have refused to grant stays in cases involving delayed filings before, and Long's delay was even more pronounced and less justifiable. See e.g., Brooks v. Warden, 810 F.3d 812, 826 (11th Cir. 2016) (holding that an inmate was not entitled to a stay where he delayed filing his § 1983 challenge until eleven weeks before his execution); In re Hutcherson, 468 F.3d 747, 749–50 (11th Cir. 2006) (denying prisoner's motion to stay his execution pending this Court's resolution of

12

his application for leave to file a successive petition because he waited until eight days before his scheduled execution to file it and, as a result, his "need for a stay of execution [was] directly attributable to his own failure to bring his claims to court in a timely fashion"); Diaz v. McDonough, 472 F.3d 849, 851 (11th Cir. 2006) (declining to grant a preliminary injunction so that an inmate could pursue an appeal because he filed his § 1983 complaint less than three days before his scheduled execution); cf. Jones v. Allen, 485 F.3d 635, 640 (11th Cir. 2007) (holding that inmate was not entitled to a stay of execution because he waited four years after learning that the state intended to execute him by lethal injection to file his § 1983 challenge).

## 2.  Res Judicata

Even if Long's method of execution claims were not barred on equitable grounds, the district court properly concluded that he could not show a likelihood of success on the merits because the claims are barred by the doctrine of res judicata.  All of the claims Long raises in this § 1983 action were raised, or could have been raised, in his fourth motion for postconviction relief, which the Florida Supreme Court rejected.  See Long, 2019 WL 2150942, at *6–7.

To the district court's concise and correct discussion, we add one point, which responds to Long's argument that applying the doctrine of res judicata would work a manifest injustice in his case.  He claims that because the state

13

courts did not give him a hearing on the merits of his general challenge, and because the hearing that they did give him on his person-specific challenge was "severely restricted" due to the "extraordinarily constrained timeline" for the litigation of his fourth postconviction motion, it would be unjust to give the Florida Supreme Court's decision preclusive effect.

There are three big problems with this argument. First, his position is unprecedented. Long has not pointed to a single published decision of the Florida courts or this Court applying Florida law holding that it is a "manifest injustice" to apply res judicata if the initial state court decision resolved a claim without granting an evidentiary hearing.[1]

The second problem with Long's position is that the "extraordinarily constrained timeline" that he complains of is a direct result of his delay in filing his method of execution claims in state postconviction proceedings until after his execution date had been set. As we have discussed, there is no reason why Long could not have challenged Florida's use of a three-drug protocol as early as 2000

---

[1] The inapplicability of the precedent that Long cites and the unpersuasiveness of the arguments that he makes are illustrated by the following sentence and citation from his brief: "This Court has declined to apply res judicata where an inmate was not given an evidentiary hearing on his challenge in state court. See Chavez v. Sec'y, 742 F.3d 1267 (11th Cir. 2014)." That citation is disingenuous. The entire discussion of res judicata in the Chavez opinion consists of the following footnote: "In light of our conclusion that Chavez has not established a substantial likelihood of success on the merits of any of his claims, we do not address and imply no view about the State's asserted defenses based on the statute of limitations, exhaustion of administrative remedies, and res judicata." Chavez, 742 F.3d at 1273 n.5.

14

(when Florida adopted lethal injection as a method of execution) or at least by 2009 (when, according to the allegations in his complaint, a number of states had switched to a one-drug protocol). And there is no reason why Long could not have challenged Florida's use of etomidate, both in general and specifically as to him, in January 2017, when the Florida Department of Corrections decided to use it as the first drug in the three-drug protocol. It is worse than ironic for Long to argue that the state court's decision does not deserve res judicata effect because the state court had to render that decision under the time constraints that Long forced on it.

There is another fundamental problem with Long's arguments against the application of res judicata. Reduced to its essence, his position is that the res judicata doctrine applies only if the court in which it is asserted agrees with the initial court's decision on de novo consideration. And, he says, we shouldn't agree with the decision of the Florida courts on these claims for a number of reasons. But that is not the way that res judicata works. If it did, the doctrine would be toothless, pointless, and fruitless. It would apply only when it made no difference. The Florida courts have never suggested such a rule-devouring exception, and we will not presume to create one for them here. See Kremer v. Chem. Constr. Corp., 456 U.S. 461, 481–82 (1982) ("It has long been established that [28 U.S.C.] § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law

15

and commands a federal court to accept the rules chosen by the State from which the judgment is taken.").

### B. Long's Public Records and Witness Claims

In addition to his three method of execution claims, Long contends that the defendants violated his constitutional rights by (1) objecting to some of his public records requests and refusing to answer some of his questions about the lethal injection protocol, and (2) denying his requests for exceptions to the Department of Corrections' witness policies.  As the district court already held, both of those claims are also barred by the doctrine of res judicata.  Long raised a public records claim in the Florida courts, see Long, 2019 WL 2150942, at *6–7, and he could have asserted any similar claims in the state court proceedings.

There are many published decisions that support the district court's ruling that, under Florida law, res judicata bars claims that Long could have raised in the state postconviction proceedings but didn't.  See, e.g., Topps v. State, 865 So. 2d 1253, 1255 (Fla. 2004) ("The doctrine of res judicata bars relitigation in a subsequent cause of action not only of claims raised, but also claims that could have been raised."); Fla. Dep't of Transp. v. Juliano, 801 So. 2d 101, 105 (Fla. 2001) ("Importantly, the doctrine of res judicata not only bars issues that were raised, but it also precludes consideration of issues that could have been raised but were not raised in the first case."); see also Vasquez v. YII Shipping Co., 692 F.3d

16

1192, 1199 (11th Cir. 2012) (applying Florida law to explain that "the purpose of res judicata is that a final judgment in a court of competent jurisdiction is absolute and settles all issues actually litigated in a proceeding as well as those issues that could have been litigated.") (quotation marks omitted).  The district court was entirely correct in concluding that Long's public records and witness claims are barred by res judicata.

## IV.  CONCLUSION

We **AFFIRM** the district court's denial of Long's emergency motion for a temporary restraining order, preliminary injunction, or stay of execution.  We **DENY** Long's motion for a stay of execution from this Court.

17

JORDAN, Circuit Judge, concurring.

The district court denied Mr. Long's claims on res judicata grounds based on the Florida Supreme Court's decision in *Long v. State*, 2019 WL 2150942 (Fla. May 17, 2019).  I agree with the majority that the district court properly applied the doctrine of res judicata, and therefore join Parts I, II, III.A.2, and III.B of its opinion.  Because our affirmance of the district court's res judicata ruling conclusively resolves Mr. Long's claims and requests for relief here, I find it unnecessary to address the issue of delay.