[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10239

Non-Argument Calendar

_____

CHARLES DANIEL MAYE,

                                        Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

                                        Respondent- Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-02619-WFJ-UAM

_____

Before NEWSOM, GRANT, and HULL, Circuit Judges.

PER CURIAM:

Defendant Charles Maye appeals the district court's denial of his petition for writ of error *coram nobis* attacking his 2006 federal felony convictions, for which he already served his sentence and supervised release. After careful review, we find no abuse of discretion and affirm.

## I. BACKGROUND FACTS

### A. Offense Conduct

The following facts are drawn from the appendix to the district court's order denying Maye's *coram nobis* petition. On appeal, Maye does not challenge the factual summary in the appendix.[1]

Maye was a deputy with the Hillsborough County Sheriff's Office. While a deputy, Maye also worked for Leroy Collins as a manager of Collins's mobile home park. In 1996, Maye, at Collins's request, began accessing the National Crime Information Center ("NCIC") and the Florida Crime Information Center ("FCIC") databases to obtain information, such as tag numbers and home

---

[1] The district court's appendix contains a prior order denying Maye's earlier *coram nobis* petition. That prior order contained a factual summary of Maye's criminal conduct that is substantially similar to the factual summary in the district court's order denying Maye's 28 U.S.C. § 2255 motion asserting claims of ineffective assistance of trial counsel.

addresses, about Collins's former girlfriend, Linda Bobo and Bobo's new romantic partner, James McLemore.

Shortly thereafter, Collins caused Bobo's home to be burglarized. After Maye provided McLemore's address, Collins visited McLemore's home and spoke to his estranged wife. Also at Collins's request, Maye stopped Bobo's vehicle, gave her a warning for driving on a suspended license, and issued her a traffic citation.

In June 1996, while Bobo and McLemore were returning to their home, McLemore was wounded in a drive-by shooting from a car similar to one owned by Collins. After Bobo and McLemore moved to a different address, Maye continued to access the NCIC and FCIC databases for information about Bobo in July and September 1996.

In September 1996, Collins met with Bobo and threatened to harm McLemore if Bobo did not leave him. When Bobo refused, McLemore was shot and killed a few days later.

Three days after McLemore's murder, Collins had a recorded conversation with Bobo and claimed to have access to computer databases. Collins also told another individual that Maye was going to put Bobo in jail. That same month, Maye arrested Bobo for driving on a suspended license. Collins then paid Bobo's bond, but Bobo refused to leave the jail with him. In November 1996, an unidentified man threw a caustic substance in Bobo's face, blinding her.

Later, in 1999 and again in 2003, Maye accessed the NCIC and FCIC databases for information about two of Collins's other

former girlfriends, Angeletta Hill Benavidez Williams and Veronica Smith. Maye also went with Collins to a former girlfriend's home to help Collins take her truck. During the investigation leading up to his indictment, Maye made statements to Florida Department of Law Enforcement ("FDLE") officials and to the Palmetto Police Department denying any involvement in a conspiracy with Collins.

## B.    Indictment

In 2004, a federal grand jury indicted Maye and Collins on multiple counts. The superseding indictment charged Maye and Collins with two counts of intentionally accessing the NCIC database in excess of authorization for private financial gain and in furtherance of criminal and tortious acts in violation of both federal and Florida laws, all in violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(2)(B) and (c)(2)(B)(i)-(ii) (Counts Two and Four).

The superseding indictment also charged Maye with one count of knowingly and willfully making false statements during an April 30, 2004 interview with a special agent of the FBI "in connection with a criminal investigation," in violation of 18 U.S.C. § 1001(a)(2) (Count Five).[2] Count Five listed the following false statements:

---

[2] Count Three charged Collins with making a false statement during his own FBI interview.

(a) in reference to his arrest of Linda Bobo on November 3, 1996, that COLLINS did not have him wait for Linda Bobo;

(b) COLLINS never asked him to find out any intelligence and that he told COLLINS he wouldn't;

(c) in reference to his accessing information regarding Veronica Smith in the NCIC database, he may have run her to see if she was wanted; and

(d) in reference to his accessing information regarding Linda Bobo in the NCIC database on January 6, 1997, he still had her driver's license and was seeing if she was licensed. He didn't run her to find her for COLLINS.

Count Five alleged the statements were false because:

(a) On November 3, 1996, MAYE was waiting for Linda Bobo to arrest her at the request of COLLINS and to assist COLLINS in exerting control over Linda Bobo;

(b) COLLINS requested MAYE on numerous occasions to obtain information or "intelligence" contained within the NCIC and FCIC databases, and he, in fact, obtained and provided that information to COLLINS;

(c) he accessed information regarding Veronica Smith in the NCIC database in an attempt to locate

Veronica Smith's current address and whereabouts for COLLINS, and not to see if Veronica Smith was wanted; and

(d) he accessed information regarding Linda Bobo in the NCIC database on January 6, 1997, to find her current address and whereabouts for COLLINS, and not to see if she was licensed.

The superseding indictment also charged Maye and Collins with a criminal conspiracy in violation of 18 U.S.C. § 371 (Count One). As charged, the conspiracy had two objects: (1) to access intentionally a computer without authorization and in excess of authorization and thereby obtain information . . . for the purpose of financial gain and in furtherance of criminal and tortious acts in violation of federal and Florida law, "that is, extortion," and (2) to knowingly and willfully make false statements in a matter within the jurisdiction of the executive branch of the government of the United States, contrary to 18 U.S.C. § 1001(a)(2).

The conspiracy count charged numerous overt acts, including Maye's traffic stops and arrest of Bobo, the burglary of Bobo's home, the drive-by shooting of McLemore, McLemore's murder, and the attack that blinded Bobo. The conspiracy count also alleged that on numerous occasions Maye accessed the NCIC database, which was restricted to law enforcement officers for law enforcement purposes, in order to obtain information about Collins's "paramours" or about McLemore and provided that information to Collins "to facilitate, assist and enable" Collins to

"extort, threaten, and commit acts of violence against other persons to force and compel them to act against their will." The conspiracy count also alleged that during multiple interviews Maye and Collins both made false statements to state and federal law enforcement, including false statements Maye made during the April 30, 2004 interview with FDLE and FBI agents to cover up acts he and others committed during the conspiracy.

## C.    Four Convictions

In 2006, after a ten-day trial, a jury convicted Maye on all four counts against him (Counts One, Two, Four, and Five). The district court imposed a total sentence of 97 months, three years of supervised release, and a $15,000 fine. Maye voluntarily dismissed his direct appeal. Maye's subsequent collateral challenges, including a prior *coram nobis* petition, were unsuccessful. Maye completed his prison term in 2013 and then his supervised release and paid the fine.

## D.    Maye's *Coram Nobis* Petition

On November 11, 2021, Maye filed this *coram nobis* petition. The petition primarily relied on the Supreme Court's then-recent decision in *Van Buren v. United States*. *Van Buren* held that a person violates the "exceeds authorized access" clause of the CFAA when he obtains information from areas of a computer that are "off limits" to him and not when he obtains information from a computer that he is authorized to use but does so for an improper purpose. 593 U.S. 374, 396 (2021).

Maye's 2021 petition argued that at a minimum his two CFAA convictions (Counts Two and Four) were invalid after *Van Buren* and that all of his convictions should be vacated.[3]  Maye contended that a presumption of collateral consequences arose from his convictions but also noted that he had lost his retirement benefits, paid a $15,000 fine, and suffered the "continuing stigma of a felony conviction."

The government opposed the petition.  The government tacitly admitted Maye's Count Two and Four convictions were invalid by conceding that in *Van Buren* the Supreme Court determined that the CFAA does not extend to a person like Maye "who ha[d] an improper purpose for retrieving information from a computer system that was otherwise available to [him]."  Instead, the government argued that *Van Buren* had no effect on Maye's other convictions for conspiracy in Count One and making false statements in Count Five and thus *coram nobis* relief would not alleviate any continuing harm flowing from his felon status.

The district court held an evidentiary hearing at which Maye testified about the continuing consequences of his convictions,

---

[3] Maye argued that his Count One conviction must be vacated because one of the two objects of the alleged conspiracy was the CFAA violations in Counts Two and Four.  And because the jury convicted Maye of Counts Two and Four, the jury must have relied on an "invalid theory to convict" him of Count One.  As for the Count Five false statements conviction, Maye argued that his false statements were made to the FBI in the course of an investigation for which it did not have jurisdiction (Maye's suspected CFAA violations) and thus also must be vacated.

including the loss of his law enforcement pension and his inability to possess a firearm in Florida, obtain employment requiring a background check, and travel to Israel with his church. During cross-examination, Maye agreed that: (1) the continuing harms stemmed from his status as a convicted felon; and (2) those harms would remain still if his convictions on Counts Two and Four were vacated. Maye also agreed that some of the false statements to the FBI charged in Count Five related to conduct that was "not strictly Computer Fraud and Abuse Act violations," such as denying that Collins had him wait for and arrest Linda Bobo and denying that Collins asked him to collect intelligence.

After the hearing, the district court entered an order denying Maye's 2021 *coram nobis* petition. The district court determined that Maye's CFAA convictions on Counts Two and Four and the CFAA-related predicate object for the Count One conspiracy conviction "are now infirm under *Van Buren*." The district court also found that Maye "still suffers the impediments" of his prior felony convictions, including social opprobrium and the loss of his firearm rights.

Nonetheless, the district court denied the writ "because even if Van Buren would render nil the district court's jurisdiction for Mr. Maye's convictions on Counts Two and Four (and also Count One which is questionable due to the double objects in that conspiracy), *Van Buren* has nothing to say about Count Five, a conviction for false material statements with[in] FBI jurisdiction." The district court explained that "[t]he same

impediments . . . would still exist" if Maye was given *coram nobis* relief on his CFAA-related convictions.  The district court stressed that Maye carried a "heavy burden" for *coram nobis* relief and that the "facts in this record are well established and are most unfavorable to Mr. Maye's equities."  The district court concluded Maye was not entitled to "the drastic and rare relief that is available under *coram nobis*" given that *Van Buren* "did not alter the district court's subject matter jurisdiction concerning Count Five" and "to grant relief on the other counts" would "leave Mr. Maye still a convicted felon with all the impediments thereto remaining."

Maye filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e).  The district court denied the motion, finding Maye failed to present newly discovered evidence or show a manifest error of law or fact.  The district court cited *United States v. George*, 676 F.3d 249, 255 (1st Cir. 2012), for the proposition that the stain of a conviction alone was not a sufficient collateral consequence warranting *coram nobis* relief and reiterated that "the same collateral consequences Mr. Maye complains of would still exist if his CFAA convictions were vacated."

## II.  STANDARDS OF REVIEW

We review a denial of *coram nobis* relief for abuse of discretion, keeping in mind that an error of law is a *per se* abuse of discretion.  *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000).  "We review the denial of a motion to alter or amend a judgment under Rule 59(e) for abuse of discretion."  *Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1341 (11th Cir. 2007).  "A

district court abuses its discretion if, among other things, it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Long v. Sec'y, Dep't of Corr.*, 924 F.3d 1171, 1175 (11th Cir. 2019) (quotation marks omitted).

### III.  GENERAL PRINCIPLES OF *CORAM NOBIS* RELIEF

"The writ of error *coram nobis* is an extraordinary remedy of last resort available only in compelling circumstances where necessary to achieve justice." *United States v. Mills*, 221 F.3d 1201, 1203 (11th Cir. 2000). The bar for *coram nobis* is high, and the writ may issue only when: (1) "there is and was no other available avenue of relief"; and (2) "the error involves a matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid." *Alikhani*, 200 F.3d at 734 (quotation marks omitted).

This Court has observed that it is difficult to conceive of a situation in a federal criminal case today, given the availability of habeas review, where *coram nobis* relief would be necessary or appropriate. *Lowery v. United States*, 956 F.2d 227, 229 (11th Cir. 1992). However, a claim of jurisdictional error "is by its nature of such a 'fundamental character' as to render proceedings 'irregular and invalid,'" and such an error may be corrected through *coram nobis* relief. *United States v. Peter*, 310 F.3d 709, 715 (11th Cir. 2002) (quoting *United States v. Morgan*, 346 U.S. 502, 509 n.15 (1954)). Thus, *coram nobis* relief is available where the district court lacked subject-matter jurisdiction to adjudicate the petitioner guilty. *Id.*

at 715-16 (concluding the district court abused its discretion by summarily dismissing a *coram nobis* petition claiming that, in light of *Cleveland v. United States*, 531 U.S. 12 (2000), the conduct with which the petitioner was charged and convicted was not an offense under the federal wire fraud statute).

### IV. MAYE'S CLAIM

Here, the district court did not abuse its discretion in denying Maye's 2021 petition for *coram nobis* relief. The district court found, and the government does not dispute, that Maye's CFAA convictions on Counts Two and Four are infirm under *Van Buren* because his charged conduct—accessing the NCIC database, something he was authorized to do, for non-law enforcement purposes—does not constitute an "exceeds authorized access" violation under § 1030(a)(2)(B) of the CFAA. *See* 593 U.S. at 396. As the district court noted, there is at least some question about *Van Buren*'s effect on Maye's dual-object conspiracy conviction on Count One because one of the objects was to violate the CFAA.

But even assuming *arguendo* Count One also is infirm in light of *Van Buren*, the district court's denial of Maye's *coram nobis* petition does not amount to an abuse of discretion under our binding precedent. This is so because (1) Maye's felony conviction on Count Five remains valid and (2) granting *coram nobis* relief only as to Counts Two and Four, and possibly Count One, would not alleviate his alleged ongoing harms, which he admits flow from his status as a felon and not from any particular conviction.

## A.  Count Five Conviction Remains Valid After *Van Buren*

*Van Buren* addressed the scope of § 1030(a)(2)(B) of the CFAA, not the scope of 18 U.S.C. § 1001(a)(2), the false-statements statute charged in Count Five.  Therefore, *Van Buren* could not, and did not, invalidate Maye's conviction for making false statements during an FBI interview, as charged in Count Five.

Maye argues that his Count Five conviction must be vacated because: (1) his false statements to the FBI were immaterial as the CFAA was "the only statute at issue" in the FBI's investigation, and "*Van Buren* held that what the FBI was investigating . . . was not a criminal offense"; and (2) "the FBI had no legitimate jurisdiction to interview" him because *Van Buren* established there was no crime for the FBI to investigate.  *See United States v. Henderson*, 893 F.3d 1338, 1350 (11th Cir. 2018) (stating that 18 U.S.C. § 1001(a)(2) requires the government to prove that the false statement was material and made in a matter "within the jurisdiction of an agency of the United States").

Maye's arguments lack merit for at least two reasons.  First, although Maye has the burden as the petitioner, he failed to offer any evidence that the FBI's investigation was limited to suspected CFAA violations.  Indeed, Maye conceded in the district court that his indictment alleged conduct beyond the CFAA to include, for example, threats, "extortion[,] and acts of violence," and false statements to the FBI that were "not strictly Computer Fraud and Abuse Act violations," such as Maye's denial that he waited to stop and arrest Linda Bobo at Collins's request.  As the government

aptly pointed out both here and in the district court, "Maye's offense conduct potentially implicated a host of other crimes," including "murder, attempted murder, extortion, and civil rights violations." Contrary to Maye's claims, the mere fact that Maye was ultimately charged with only CFAA violations and making false statements during an FBI interview does not establish that was all the FBI was investigating when it interviewed him.

Second, Maye's challenges to the materiality and jurisdictional elements of his false statements conviction relate to "the omission of an allegation requisite to liability" and do not demonstrate his "innocence of the charged offense . . . from the very allegations made" against him, as required for *coram nobis* relief. *See Peter*, 310 F.3d at 715-16. In other words, Maye was not charged with, or convicted of, a "non-offense" in Count Five such that the district court was without subject-matter jurisdiction to convict and sentence him. *See id.* at 715. As such, these claims do not raise the kind of fundamental jurisdictional error warranting *coram nobis* relief. *See id.* at 714.[4]

In short, Maye has not shown that *Van Buren* calls into question, much less invalidates, his Count Five conviction for making false statements during an FBI interview.

---

[4] We note also that Maye fails to offer any authority to support his claim that the materiality of his false statement about *suspected* CFAA violations or the FBI's jurisdiction to investigate those *suspected* CFAA violations depended on whether CFAA violations actually were committed. This argument seems to turn the notion of a criminal investigation on its head.

## B. Vacatur of Counts One, Two, and Four Will Not Alleviate Maye's Alleged Harms From His Felon Status

Because Maye remains a convicted felon after *Van Buren* and all of his alleged adverse consequences flow from his felon status, he cannot satisfy the high bar for *coram nobis* relief. *See Alikhani*, 200 F.3d at 734. That bar requires a showing of "compelling circumstances where necessary to achieve justice." *Mills*, 221 F.3d at 1203. Our binding precedent repeatedly has recognized that a *coram nobis* petitioner cannot show "compelling circumstances" warranting such extraordinary relief when vacating the challenged convictions would not alleviate the adverse consequences allegedly stemming from them.

For example, in *Rener v. United States*, our predecessor Court affirmed the district court's denial of Rener's petition for *coram nobis* relief that sought to have a "previously served" 1952 federal conviction for possession of untaxed marijuana vacated on the grounds that it was invalid after a Supreme Court decision. 475 F.2d 125, 126 (5th Cir. 1973).[5] The Court agreed with the district court's determination that "Rener had failed to present any 'compelling circumstances' which would justify the grant of the extraordinary remedy of coram nobis," because "[n]owhere in the pleadings filed below did Rener allege that he is subject to any

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981. Thus, we are bound by *Rener*, *Rodgers*, and *Campbell*, discussed above.

adverse effects emanating from the prior federal conviction." *Id.* The Court pointed out that, because "Rener was convicted and sentenced on four felony offenses subsequent to the 1952 conviction, it appears unlikely that such is the case." *Id.* at 126-27. The *Rener* Court explained that "coram nobis should only be allowed to remedy manifest injustice," and "[i]ts purpose is not to burden courts with the rendition of futile decrees." *Id.* at 127 (quotation marks and citation omitted).

Likewise, in *Rodgers v. United States*, the former Fifth Circuit affirmed a district court's denial of a *coram nobis* petition under similar circumstances to *Rener*. *See* 451 F.2d 562, 563 (5th Cir. 1971). The *Rodgers* petitioner sought to vacate a 1946 juvenile conviction because he was not appointed counsel as required by *In re Gault*, 387 U.S. 1 (1967). *Id.* at 563 & n.6. After his juvenile conviction, the petitioner "served time" for other felony convictions. *Id.* at 563 & n.5. The petitioner claimed numerous adverse effects stemming from the 1946 judgment, including more severe penalties imposed on his later convictions, higher bonds, consideration as part of parole evaluation, disclosure on job applications, registration as a convict in some jurisdictions, and denial of the right to vote. *Id.* at 563 & n.4. The *Rodgers* Court explained that "an order of this Court setting aside the 1946 judgment could have no effect toward alleviating [the petitioner's] difficulties in view of all the other convictions. This Court will not render a futile decree." *Id.* at 563.

Finally, *Campbell v. United States*, which relies on *Rener* and *Rodgers*, is directly on point. *See* 538 F.2d 692, 692-93 (5th Cir. 1976). In *Campbell*, the petitioner was convicted in 1967 of four counts of transferring marijuana without required documentation ("the documentation statute") and four counts of acquiring marijuana without paying a tax ("the tax statute"). *Id.* Campbell's *coram nobis* petition asserted that his 1967 convictions were constitutionally infirm based on a recent Supreme Court decision.[6] *Id.* at 693. But that Supreme Court decision held retroactively unconstitutional only the tax statute underpinning four of Campbell's counts of conviction, and another Supreme Court decision had upheld the constitutional validity of the documentation statute underpinning Campbell's remaining four counts. *Id.* Citing *Rener* and *Rodgers*, the *Campbell* Court affirmed the district court's denial of the petition, reasoning that, "[s]ince only four counts of the 1967 conviction would be void because of the unconstitutional statute, the remaining four counts remain valid, the granting of a coram nobis would be of no help to Campbell." *Id.*

---

[6] Campbell filed a "joint petition" for *coram nobis* relief from his 1967 conviction and for 28 U.S.C. § 2255 relief from a subsequent drug conviction in 1972, for which he was still incarcerated. 538 F.2d at 692-693. Campbell's § 2255 motion argued in part that his 1972 drug conviction was "void because the 1967 conviction was introduced at his trial and was considered in determining [his] sentence." *Id.* at 693. The *Campbell* Court concluded § 2255 relief was not warranted because the district court, in denying Campbell's § 2255 motion, had appropriately treated the 1967 convictions as void and found that Campbell would have received the same sentence for his 1972 conviction. *Id.*

Here, like in *Campbell*, the Supreme Court decision Maye relies upon invalidated only some of his felony convictions. But as Maye necessarily conceded at his evidentiary hearing, his alleged ongoing harms result from his felon status and are not directly related to any particular count of conviction. In fact, at the evidentiary hearing, Maye could not articulate how vacatur of only some but not all of his convictions would afford him meaningful relief. Because vacating Maye's convictions on Counts Two and Four, and possibly Count One, would not alleviate the alleged harms resulting from his felon status, Maye did not carry his burden to show "compelling circumstances" justifying granting the extraordinary remedy of *coram nobis* relief. *See id.* at 693; *Rener*, 475 F.2d at 126-27; *Rodgers*, 451 F.2d at 563.

Accordingly, we cannot say the district court abused its discretion in denying Maye's 2021 *coram nobis* petition or in denying his subsequent Rule 59(e) motion.

**AFFIRMED.**