**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 25-14302

————————————

FRANK A. WALLS,

*Plaintiff-Appellant,*

*versus*

SECRETARY, DEPARTMENT OF CORRECTIONS,
WARDEN, FLORIDA STATE PRISON,

*Defendants-Appellees.*

————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:25-cv-00488-MW-MAF

————————————

Before WILLIAM PRYOR, Chief Judge, and ROSENBAUM and JILL
PRYOR, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

In 1987, Frank A. Walls shot and killed Edward Alger and
Ann Peterson in Alger's home. A jury found him guilty of murder,
and the trial court sentenced him to death. The Florida Supreme
Court affirmed his sentence on direct appeal in 1994, and multiple

state and federal courts later declined to disturb it on collateral review after rejecting his claims of ineffective assistance of counsel and mental disability. The Governor of Florida signed Walls's death warrant on November 18, 2025. A warden scheduled him to be executed on December 18, 2025. On November 26, Walls sued in the district court, alleging that his lethal injection would cause severe and unnecessary pain in violation of the Eighth Amendment to the Constitution. *See* 42 U.S.C. § 1983. A week later, he moved the district court to stay his execution. The district court denied his motion. After Walls filed an appeal, he moved this Court for a stay. Because Walls has not established that he is likely to succeed in his appeal, we deny his motion.

## I.  BACKGROUND

In July 1987, Walls murdered Edward Alger and Ann Peterson during a burglary of Alger's home. *See Walls v. State*, 926 So. 2d 1156, 1161 (Fla. 2006). A Jackson County jury found Walls guilty of two counts each of first-degree murder and kidnapping, as well as burglary and petit theft. *Id*. at 1162. The jury unanimously recommended a sentence of death for Peterson's murder, which the trial court entered. *Id*. The Florida Supreme Court affirmed the convictions and death sentence on direct appeal, *see Walls v. State*, 641 So. 2d 381, 391 (Fla. 1994), and the Supreme Court of the United States denied Walls's petition for a writ of certiorari, *see Walls v. Florida*, 513 U.S. 1130 (1995). Walls later unsuccessfully moved for postconviction relief in Florida courts. *See Walls*, 926 So. 2d at 1163; *Walls v. State*, 3 So. 3d 1248 (Fla. 2008); *Walls v. State*, 361 So. 3d 231 (Fla. 2023). And he unsuccessfully sought

25-14302                    Order of the Court                    3

postconviction relief in federal court. *See* 28 U.S.C. § 2254. *See Walls v. Buss*, 658 F.3d 1274 (11th Cir. 2011); *In re Walls*, No. 23-10982 (11th Cir. Apr. 13, 2023). He has been eligible to be executed since at least 2023.

On November 18, 2025, Governor Ron DeSantis signed Walls's death warrant. The same day, a prison warden scheduled Walls's execution for December 18, 2025, at 6:00 p.m. On November 26, 2025, Walls filed a complaint in the district court against the warden and the Secretary of the Department of Corrections for declaratory and injunctive relief. Walls alleged that Florida's lethal injection protocol created a substantial risk that, in the light of his health conditions, he would experience severe pain and suffering from pulmonary edema in violation of the Eighth Amendment. He also alleged that recent executions have been "rife with error," exposing him to more risk of pain. And he identified execution by firing squad as a readily available alternative.

Walls did not move for a stay of his execution in the district court until December 3. He then argued that he qualified for a stay because his claim "hinge[d] on complex questions concerning [his] cardiopulmonary health, his susceptibility to the torturous condition of pulmonary edema, [Florida's] ability to comply with [its] protocol, and the substantial risk of superadded pain," none of which were resolvable by his execution date. The State responded that Walls sought relief "dilator[ily]." Specifically, it argued that Walls's "medical records . . . prove he could have brought his current lethal injection challenge years ago."

The district court denied Walls's motion on December 9. Based on our decision in *Long v. Secretary, Department of Corrections*, 924 F.3d 1171 (11th Cir. 2019), it ruled that "Walls's delay in seeking a stay of execution until over two weeks after his death warrant was signed [was] fatal to his requested relief." It found that the risks to Walls from the lethal injection protocol were apparent for years. And even if his doctor concluded that his health conditions recently worsened, Walls still "waited several months" after the doctor's report to file suit. Moreover, the district court faulted Walls for waiting an additional week after he filed suit to seek a stay.

Walls appealed the order denying a stay the same day the district court entered it. And he moved this Court to stay his execution pending his appeal.

## II.  STANDARD OF REVIEW

We review the denial of a stay for abuse of discretion. *Powell v. Thomas*, 641 F.3d 1255, 1257 (11th Cir. 2011). We may grant a stay of execution only if the inmate establishes that he has a substantial likelihood of success on the merits, that he will suffer irreparable injury without a stay, that a stay would not substantially harm the State, and that a stay would not be adverse to the public interest. *Id*. "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *United States v. Toll*, 804 F.3d 1344, 1353 (11th Cir. 2015) (citation and internal quotation marks omitted).

### III. DISCUSSION

Walls argues that "[t]he stay factors weigh in favor of granting a stay of execution." He maintains that the order denying a stay is likely to be reversed on appeal because it "completely ignore[d] . . . serious allegations and evidence in the complaint" and measured his delay from too early a starting point. Walls also asserts that, absent a stay, he will suffer irreparable injury in the form of "superadded" pain and suffering during his execution. And he contends that neither the State nor the public has an interest in executing him with unnecessary pain.

Walls faces a difficult burden in establishing that the district court likely abused its discretion. We examine "not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004). We employ a "strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Id*. at 650. The Supreme Court has explained that "[l]ast-minute stays" of execution "should be the extreme exception, not the norm." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019).

We agree with the district court that our decision in *Long* is instructive. There, a prisoner also filed a complaint alleging that the administration of the Florida lethal injection protocol would violate his Eighth Amendment rights. 924 F.3d at 1174–75. The trial court sentenced the inmate to death in 1985. *Id*. at 1173–74. After a

string of failed challenges to his sentence in state and federal courts, the governor signed his death warrant on April 23, 2019, and the warden set his execution for May 23, 2019. *Id*. at 1174. But the inmate waited until May 8, 2019, to file his complaint in the district court. *Id*. He attached to his complaint emergency motions for a stay, a temporary restraining order, and a preliminary injunction. *Id*. at 1174–75. The district court denied the stay, and the inmate filed an expedited appeal. *Id*. at 1175.

We denied the motion for a stay for "two independently adequate reasons." *Id*. at 1176. First, we held that the prisoner's case was "within 'the norm' where the 'strong equitable presumption against the grant of a stay' applies." *Id*. at 1177 (quoting *Bucklew*, 139 S. Ct. at 1134). And we rejected his argument that evidence of complications from recent executions excused his delayed challenge. *Id*. Specifically, the prisoner alleged that three recent executions—on November 8, 2017, February 22, 2018, and December 13, 2018— inflicted severe pain on the executed. *Id*. We held that even the "delay of five months" between the last execution and the prisoner's challenge was "too long." *Id*. As to the prisoner's as-applied challenge to the protocol premised on his own "serious medical conditions," we ruled that the inmate "ha[d] known about his medical conditions for decades." *Id*. Florida instituted the protocol he (and now Walls) challenged in January 2017. *Id*. We held that "two years and four months" between the new protocol and the inmate's lawsuit constituted inexcusable delay. *Id*. at 1177–78. Second, we concluded that "[e]ven if" the prisoner had not unduly delayed, his claims were still "barred by the doctrine of res judicata" because

25-14302                 Order of the Court                 7

they "were raised, or could have been raised," in his rejected petitions for postconviction relief. *Id*. at 1178.

Walls's suit suffers from similar flaws. As his complaint alleges, complications arising from drugs used in Florida's protocol have been well-documented for years. For example, Walls alleges that the post-execution autopsies of four Florida inmates in February 2018, May 2023, August 2024, and April 2025, suggested that they suffered from pulmonary edema during their execution. Even viewing the April execution as an acceptable reference point, Walls waited seven months to file his complaint. *See id*. at 1177 ("A delay of five months . . . is too long."). And since at least 2017, Walls has suffered from several chronic health conditions—obstructive sleep apnea, hypertension, low blood oxygenation, and obesity—that he now alleges put him at risk of painful pulmonary edema. *See id*. (finding undue delay where the inmate had "known about his medical conditions" underlying his method of execution claim for years prior to filing suit). Walls's case is "not one of the 'extreme exceptions' in which a last-minute stay should be entered." *Id*. (alteration adopted) (quoting *Bucklew*, 139 S. Ct. at 1134).

Walls argues that the district court erred by focusing only on his delay. But his argument misunderstands settled precedent. The Supreme Court explained in *Nelson* that district courts "must consider not only the likelihood of success on the merits and the relative harm to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim." 541 U.S. at 649–50. It explained that a district court must consider *both* of those issues

"before *granting* a stay," *not* before denying one. *Id*. at 649 (emphasis added). And we held in *Long* that the motion for a stay failed for "two *independently* adequate reasons": first, for inexcusable delay, and second, based on res judicata. 924 F.3d at 1176 (emphasis added).

Walls also asserts that the district court failed to consider that his claim relies on two recent events. Specifically, he argues that the district court should have measured his delay from either a reference point of late July, when "a significant change in his medical condition [was] uncovered," or October 28, when he obtained "specific drug log records" establishing Florida's recent maladministration of its protocol. With those events as a reference point, Walls contends, he filed his complaint about four months after discovering that his execution "would implicate a constitutionally unacceptable risk of needless suffering." And during that four-month delay, he says, his counsel exercised "due diligence that led to the discovery" of the drug logs.

Like the district court, we doubt Walls's suit could have been filed only as early as July. The record establishes that Walls has suffered for at least eight years from the same conditions he now alleges will cause him severe pain and suffering. But in any event, Walls's admission that his suit could have been filed four months earlier dooms his motion. We ordinarily do not grant a motion for a stay when it "could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Nelson*, 541 U.S. at 650. And we cannot say that the district

court likely abused its discretion by extending *Long* "in an unreasonable or incorrect manner." *Toll*, 804 F.3d at 1353. (citation and internal quotation marks omitted). We held in *Long* that a five-month delay was "too long." 924 F.3d at 1177. And Walls admits that he waited nearly four and a half months to move for a stay.

Walls also faults the district court for ruling that he unduly delayed even though he sued before the two-year statute of limitations expired. Yet, Walls's argument answers the wrong question. Because "a stay of execution is an equitable remedy," the "rules of equity apply." *Id.* at 1176. One of those rules is that courts ordinarily do not grant a stay when the movant created the need for it. *See In re Hutcherson*, 468 F.3d 747, 750 (11th Cir. 2006) (denying stay of execution where inmate's "need for a stay of execution [was] directly attributable to his own failure to bring his claims to court in a timely fashion"). The purpose of that equitable rule would be defeated were we to rule that no undue delay occurs whenever a challenge is not barred by the statute of limitations. Suppose, for example, that Walls could have sued twenty months ago but filed his complaint and motion for a stay the day before his execution. That delay would plainly be inequitable under both Supreme Court and our precedent, even if Walls filed it within the limitations period.

## IV. CONCLUSION

We **DENY** Walls's motion for a stay of his execution.